563 F.Supp. 76 (1983)
Gary E. SIMON, Plaintiff,
v.
ST. LOUIS COUNTY, Missouri, et al, Defendants.
No. 77-1140C(3).
United States District Court, E.D. Missouri, E.D.
March 31, 1983.
Kent Hull, South Bend, Ind., Ruppert, Westhus & Benjamin, Francis Ruppert, Clayton, Mo., for plaintiff.
Thomas W. Wehrle, St. Louis County Counselor, Clayton, Mo., Glen R. Murphy, Gaithersburg, Md., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits of plaintiff's complaint *77 after trial to the Court. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. After consideration of the testimony and exhibits introduced at trial, the parties' briefs, and the applicable law, the Court enters the following memorandum opinion which it adopts as its findings of facts and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).
This matter is before the Court for a second time. After the first trial the Court entered its opinion in which it held for defendant on all aspects of plaintiff's claim. Simon v. St. Louis County, Missouri, 497 F.Supp. 141 (E.D.Mo.1980). The essential facts underlying plaintiff's claim are set forth in that opinion and will not be repeated here. The Court ruled that plaintiff could not proceed under 29 U.S.C. § 793 and that plaintiff had failed to prove his claims under 29 U.S.C. § 794 and under the Constitution. Plaintiff appealed the holding, and the Eighth Circuit affirmed in part and reversed in part this Court's decision and remanded the case for further consideration. Simon v. St. Louis County, Missouri, 656 F.2d 316 (8th Cir.1981).
In its opinion, the Eighth Circuit upheld the Court's dismissal of plaintiff's claims under 29 U.S.C. § 793 and the Constitution. As to plaintiff's claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794 (§ 504), the Court reversed and remanded for further consideration. Specifically, the appellate court reversed this Court's determination that plaintiff was not an "otherwise qualified handicapped individual" as required by § 504 and as interpreted by the Supreme Court in Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). On remand this Court was directed to undertake a four part determination:
the district court should consider whether the requirements for police officers of St. Louis County, as testified to at trial by Colonel Kleinknecht, are reasonable, legitimate, and necessary requirements for all positions within the department. The district court should determine whether the ability to make a forceful arrest and the ability to perform all of the duties of all of the positions within the department are in fact uniformly required of all officers. If not uniformly required, they should not be considered actual requirements for all positions. Also, consideration should be given to Simon's actual physical condition in combination with Simon's police experience, and further determinations made as to exactly what functions within the department he has the physical abilities to perform. Finally, the court should determine whether the accommodations necessary in order to employ Simon as a commissioned police officer are unreasonable.
Simon, 656 F.2d at 321. The Court believes that the question of uniformity of application should logically be addressed initially, for if the Court finds the requirements were not uniformly applied, then they are no barrier to plaintiff's reinstatement.

A. Uniformity of Application.
It is plaintiff's contention that defendants' requirements that commissioned officers 1) be able to effect a forceful arrest, and 2) be able to rotate or transfer among all positions in the department are not uniformly applied. As to the forceful arrest requirement, plaintiff contends for several reasons that the policy is not uniformly applied.
First, plaintiff argues that the "Rank and Assignment" positions within the department are staffed to an extent by commissioned officers who specifically are not required to be able to effect a forceful arrest. The record indicates, however, that these positions are civilian positions that commissioned officers may apply for. Defendants do not dispute that Rank and Assignment personnel are not required to effect forceful arrests or that commissioned officers have entered these positions. However, once a commissioned officer enters a Rank and Assignment position his commission is held in reserve by the department. He is no longer charged with the duty to enforce the law or keep the peace. It is true that a commissioned officer who takes a Rank and Assignment position does not lose benefits *78 acquired while he was a commissioned officer. But the fact remains that Rank and Assignment positions are civilian jobs.
Second, plaintiff contends that in several instances police officers have retained their commissions even though they were unable to effect a forceful arrest. One officer, Officer Wisdom, was unable to fire a gun with his left hand and had reduced strength in that hand. Another officer, Officer O'Donnell, was transferred from a "beat" position to the department's Bureau of Internal Affairs after undergoing surgery to remove a tumor. The Court notes differences, however, between plaintiff's impairment and the conditions of the officers cited. Officer Wisdom's impairment was far less severe than plaintiff's, and Officer O'Donnell's condition was temporary as opposed to plaintiff's, which is permanent. Moreover, the department obviously believed these officers were still able to effect forceful arrests, and the Court is inclined to defer to the department's expertise on these matters. Finally, the department employs 554 commissioned officers. Even assuming arguendo that one or both of the situations brought up by plaintiff could be construed as exceptions to the forceful arrest requirement, the Court cannot say these isolated instances would indicate that the department has a policy of not uniformly applying the requirement. In a force this size, it is certainly reasonable that enforcement of the forceful arrest requirement may be a problem. In summary, the Court finds that the forceful arrest policy is uniformly applied by the department to its active commissioned officers.
Plaintiff argues that defendants' transferability policy is not uniformly applied and is thus, not an actual requirement for commissioned police officers in the department. Plaintiff points to the tenure periods of approximately twenty officers which exceed the tenure requirements for their positions. Plaintiff also contends that Rank and Assignment personnel have no transferability requirement.
The Court finds that plaintiff's contentions on this point are without merit. First, the defendants put on credible evidence demonstrating the average number of transfers for officers according to their seniority. This evidence demonstrated two points: first, the more senior officers had the greater number of transfers, reflecting continuing viability of the transfer policy; second, the ratio of transfers per years of service indicates great mobility among positions. The second reason plaintiff's argument on this point fails is that the examples used by plaintiff do not take into account recent transfers or the fact that the requirement was introduced only in 1973. The documents used by plaintiff in some cases antedate the inception of the transfer policy, thus skewing some of plaintiff's conclusions. Third, the number of instances of alleged nonapplication of the transfer policy equates to less than four percent of the total of commissioned officers on the force. Again, with an organization this size, the lack of 100 percent efficiency can hardly be said to represent a policy of nonuniform application. Finally, plaintiff's arguments concerning the nonapplication of the transferability policy to Rank and Assignment personnel is without merit for the reasons discussed above by the Court with reference to the forceful arrest policy. Plaintiff's contention simply ignores the fact that Rank and Assignment personnel are civilians and not commissioned officers. In conclusion, therefore, the Court finds that defendants' transferability policy is uniformly applied.

B. Reasonableness, Legitimacy, Necessity of Defendants' Requirements.
The heart of the Court of Appeals' remand order directed this Court to determine if defendants' forceful arrest and transferability policies are reasonable, legitimate, and necessary. The Eighth Circuit held that under § 504 an "otherwise qualified handicapped individual" is one who can meet the reasonable, legitimate, and necessary requirements of the program. Thus, the Court turns to an examination of defendants' two requirements against this standard.
*79 The bulk of plaintiff's evidence concerning the reasonableness, legitimacy, and necessity of defendants' forceful arrest requirement consisted of the testimony of officers from other police departments around the country. The essence of this evidence was that these forces have commissioned police officers, who because of physical impairments, are unable to effect forceful arrests. Defendants, in turn, produced highly qualified expert testimony that the forceful arrest policy was a nationwide standard that is reasonable, legitimate, and necessary. One of the experts testified that this requirement guarantees the essence of police workpublic protection and enforcement of the laws. He also emphasized the need to enforce this requirement strictly and noted that some departments with which he was familiar did not enforce this requirement as rigidly as they should. He testified that he always had recommended that these departments strictly enforce the forceful arrest requirement.
Plaintiff also argues that because Rank and Assignment personnel do not have to make forceful arrests, it is evident that the requirement is not reasonable, legitimate or necessary. Again, however, the Court finds that the Rank and Assignment positions are staffed by civilians. Thus, evidence regarding the application (or nonapplication) of the forceful arrest requirement to these personnel simply is not relevant to the issues in this case.
Finally, plaintiff argues that there are commissioned officers in many positions in the department who have never been required to make a forceful arrest. Thus, plaintiff argues, the requirement is not reasonable, legitimate, and necessary for all positions in the department. The Court agrees that there are indeed some positions in which forceful arrests are not likely to be made by the commissioned officers filling them. This, however, is not an appropriate standard by which to judge whether the forceful arrest requirement is reasonable, legitimate, and necessary. Certainly plaintiff would not contend that because, hypothetically, only two-thirds of the commissioned officers are likely to make forceful arrests in their present assignments, the number of commissioned officers on the force able to effect a forceful arrest should be reduced by two-thirds. Moreover, plaintiff's argument ignores the fact that commissioned officers, notwithstanding their current position within the department, must always be able to effect a forceful arrest whenever the occasion arises. This includes times when the officers are not actually on-duty.
At the time of trial, the County Police had 554 commissioned officers. There is a ceiling placed by law on the number of commissioned officers defendants can retain. Plaintiff has proven, and defendants do not dispute, that a significant portion of the department's commissioned officers do not make forceful arrests on a daily basis. In fact, in some instances, it is unlikely that commissioned officers in certain positions would ever have to effect a forceful arrest. Nonetheless, the department has planned for certain contingencies, taking into account all the pertinent factors, and has arrived at its staffing figures. This planning takes into account worst-case scenarios and the fact that police officers have the duty to enforce the law even when they are not on duty. In short, the department has built a "reserve factor" into its staffing needs. Further, an analysis of the staffing needs of the department must take into account the department's transferability policy under which an officer may be transferred from a position in which it is unlikely he would have to make a forceful arrest to a "beat" position in which this contingency is quite likely. It may be that all 554 commissioned officers will never be called upon to make forceful arrests. The department, however, obviously sees the need to have this reserve of commissioned officers for use if needed.
This Court is unwilling to second guess the decisions of those infinitely better versed in the intricacies of personnel planning, municipal finance, and law enforcement techniques who have set the staffing requirements for the St. Louis County Police Department. If this Court were to hold *80 that the department's forceful arrest requirement was not reasonable, legitimate, and necessary as applied to those commissioned officers who are not currently filling assignments in which they are likely to make forceful arrests, it would, in effect, slash the reserve strength of the department and curtail its ability to transfer its officers. All positions currently held by commissioned officers who are not likely to make forceful arrests would be open to those not able to effect such an arrest. Thus, the actual strength of the department would be significantly less than its authorized strength. The Court declines to substitute its judgment for that of those who have set the staffing requirements for the department. Thus, the Court finds that defendants' forceful arrest requirement is reasonable, legitimate, and necessary for all commissioned officers in the department.
Defendants put on expert testimony concerning the need for the department's free transferability requirement. The evidence demonstrates that the policy promotes morale and efficiency, curbs stagnation and "burn-out," and produces well-rounded officers. Plaintiff made no real effort to counter this evidence but instead argues that he already has had several assignments within the department, and if reinstated would be transferable among some, but not all, of the department's assignments.
The Court does not believe plaintiff has controverted defendants' showing of the validity of the department's transferability requirement and finds the requirement to be reasonable, legitimate, and necessary. If it were not enforced as to all commissioned officers, or if it were limited to only certain positions, many of the transferability policy's advantages would be lost. While it is true that plaintiff may be transferable among some assignments, he is not transferable among all of them as required. For the Court to direct the St. Louis County Police Department to limit the scope of its transferability policy according to the limitations of a particular officer would result in erosion of the policy.

C. Functions Plaintiff Could Perform.
The third part of the Court of Appeals' remand instructions directed the Court to determine what functions in the department plaintiff has the physical abilities to perform. Plaintiff's physical condition and his prior police experience should be taken into account in making this determination.
Plaintiff, of course, is a paraplegic. He needs mechanical assistance when walking. He testified he works on his own cars and changes the oil in them. He demonstrated he could lift a forty pound object from the floor to the Court's bench, but not without some difficulty. Plaintiff testified he can climb a ladder and that he does work on the roof of his home. Finally, plaintiff testified that he could climb 62 steps in three minutes. Plaintiff's attitude and disposition are excellent, and there is no doubt about plaintiff's great motivation and desire to succeed. His prior police experience is detailed in the findings of fact of the Court's first decision. Simon, 497 F.Supp. at 143. Briefly, he was a commissioned officer for two years and had four separate assignments. At the first trial in this matter, plaintiff's witness, Dr. Misner, testified that plaintiff had the physical ability to perform as a commissioned officer in approximately eleven separate positions within the department, and in all Rank and Assignment positions. Defendants' witnesses for the most part testified as to certain duties in these positions that would preclude plaintiff from performing in them as a commissioned officer.
After reviewing the evidence presented by the parties with respect to each of the positions that Dr. Misner testified plaintiff could perform in, the Court finds that plaintiff could physically perform the tasks in four positions, but for, of course, plaintiff's inability to meet the department's forceful arrest and transferability requirements. The Court finds plaintiff could perform the functions of a School Safety Officer in the department's Bureau of School Safety Patrol, a Staff Officer in the Bureau of Internal Affairs, a Staff Officer in the Bureau of Field Management, and a Community Relations *81 Officer in the Bureau of Police-Community Relations. The Court notes that there may be no positions in the Bureau of Field Management for commissioned officers. The Court believes that plaintiff has the physical ability to perform in these four assignments even though slight accommodations might be required.
With respect to the remaining seven positions that Dr. Misner testified plaintiff could fill, the Court finds that one, the position of Staff Officer in the Bureau of Staff Inspections, no longer exists, and another, the position of Staff Officer, Analyst, or Research Associate in the Bureau of Planning and Research, is staffed solely by civilian personnel. As to the five other positions, the Court finds that plaintiff's physical impairment precludes him from consideration. These jobs, Precinct Desk Officer, Criminal Intelligence Officer, Crime Scene Analyst or Property Control Officer, Communications Officer, and Trainer or Personnel Officer, require physical mobility, the ability to lift or move heavy and bulky objects, the ability to handle prisoners, and the ability to maneuver quickly and in cramped or remote locations, to an extent that exceeds plaintiff's demonstrated physical abilities.

D. Reasonableness of Necessary Accommodations.
The Court of Appeals instructed this Court on remand to determine the reasonableness of the accommodations defendants would be required to undertake in order to hire plaintiff as a commissioned police officer. In so doing, the court noted that Southeastern Community College v. Davis, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979) makes it clear that defendants do not have to "`effect substantial modifications of [their] standards to accommodate a handicapped person.'" The Eighth Circuit noted further that while this Court had held that substantial accommodations would be required, the Court of Appeals believed this was based on an assumption, not then established, that the department's transferability and forceful arrest requirements were necessary to the job. Simon, 656 F.2d at 321 n. 10.
As discussed above, the Court has found that the forceful arrest and transferability requirements are reasonable, legitimate, and necessary for all commissioned officers' positions within the department. It seems a logical corollary, therefore, that to require their abrogation would be to require an unreasonable accommodation. As the Court discussed above, the forceful arrest policy is a sine qua non of the department's tasks of law enforcement and protection of the public. If the requirement were not applicable to all commissioned officers, the actual strength of the department would be substantially reduced. The transferability requirement was demonstrated to be a completely valid requirement which is essential to further certain personnel goals of the department. If this prerequisite were not applicable to all commissioned officers or to all positions held by commissioned officers, it would not be effective in furthering these goals. Thus, the Court finds that only unreasonable modification of the department's requirements would allow the hiring of plaintiff.
In summary, the Court finds that the department's forceful arrest and transferability requirements are uniformly applied and are actual requirements for all commissioned officers. The Court also finds that these requirements are reasonable, legitimate, and necessary for all commissioned officers' positions within the department. The Court finds further that but for these dual requirements, plaintiff could physically perform the tasks of School Safety Officer, Staff Officer, Bureau of Internal Affairs, Staff Officer, Bureau of Field Management, and Community Relations Officer within the department. Finally, the Court finds that unreasonable modifications to the department's valid requirements would have to be made to effect the hiring of plaintiff as a commissioned officer.