Argued and submitted May 20, affirmed August 24, reconsideration denied September 30, petition for review denied October 18, 1983 (295 Or 773)

## PACIFIC MOTOR TRUCKING COMPANY,
*Petitioner,*

*v.*

## BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

(16-78; CA A25781)

668 P2d 446

Jeffrey M. Batchelor, Portland, argued the cause for petitioner. With him on the brief were Laurence F. Janssen, Richard C. Hunt, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Employer Pacific Motor Trucking Company (PMT) seeks review of an order of the Commissioner of the Bureau of Labor and Industries issued pursuant to ORS 659.400 *et seq.,* finding that it unlawfully discharged John D. McKay because of his back condition. At that time ORS 659.425(1) provided:

> "It is an unlawful employment practice for any employer to refuse to hire, employ or promote or to bar, discharge, dismiss, reduce in compensation, suspend, demote or discriminate in work activities, terms or conditions because an individual has a physical or mental handicap, *unless it can be shown that the particular handicap prevents the performance of the work involved."* (Emphasis supplied.)[1]

The issue is under what circumstances an employer may discharge an employe on the ground of the risk of an on-the-job handicap-related injury. McKay had been working for PMT for 10 months as a truck driver on a casual basis. His duties included heavy lifting. He was released when he was disqualified from permanent employment as a heavy-duty truck driver on the basis of back x-rays that revealed spondylolisthesis.

The medical evidence regarding McKay's condition and the nature of the disease is substantially undisputed. Spondylolisthesis is a progressive condition characterized by the slipping forward of one vertebra over another. McKay's spondylolisthesis was categorized as a Class I on a three or four class scale, because the displacement was less than 25 percent. There was medical evidence that spondylolisthesis is degenerative, a Class I spondylolisthesis could progress to a more advanced state and eventually develop into serious back problems. The risk of injury increases as the person ages and the supporting muscles, tendons and ligaments lose their elasticity. There was also evidence that many people with the condition never develop incapacitating problems. An orthopedic physician testified that there was a medical probability greater than 50 percent that McKay could work as a heavy duty truck driver without back problems but that he would not encourage him to do that kind of work.

---

[1] The parties agree that the applicable statute is the one in effect at the time of the alleged violation. The statute was amended in 1979. Or Laws 1979, ch 640, § 3.

At the time of the hearing in December, 1980, McKay was 43 and was working for Union Pacific Railroad as a heavy-duty truck driver. The Commissioner found that McKay's employment history included a number of positions that required heavy lifting related to the duties of a truck driver. There was evidence that on two occasions after leaving PMT McKay suffered back injuries, one at home and one working at Union Pacific, but the Commissioner made no findings regarding those incidents. There was no other evidence of back pain or injury.

The Commissioner found:

"At the time of his rejection, Mr. McKay had the ability to perform the duty of heavy-duty truck driver at no higher risk of injury or incapacitation than others."

She concluded:

"Since Mr. McKay had the current or present ability to perform the duties of heavy-duty truck driving, [PMT's] rejection of his application for full-time employment constitutes a violation of ORS 659.425."

PMT makes two assignments of error. It challenges the finding regarding McKay's comparative risk of injury or incapacitation and also argues that the Commissioner erred in her interpretation of the risk of injury due to the physical defect that the statute requires the employer show in order to justify a discharge. We consider the second point first.

The statute was previously construed by the Supreme Court in *Montgomery Ward v. Bureau of Labor,* 280 Or 163, 570 P2d 76 (1977). A man who had had a heart attack and suffered continuing angina was refused employment as a heavy appliance salesman because of his heart condition. The issue, as here, was how to take into account the possibility of injury to the applicant in determining whether, under the statute, the "handicap prevents the performance of the work." The Commissioner found that a handicap justified a refusal to employ when there was

" "* * * a *high probability* of incapacitation while performing the ordinary tasks comprising the job in question.' " 280 Or at 165. (Emphasis theirs.)

On appeal we disagreed, stating that the question was whether there was

" "* * * a reasonable medical *possibility* that the applicant *might,* because of the extent of disability and the nature of the work, be unable to perform the work or could experience injury as a result of attempting to perform it. * * *' " 280 Or at 165. (Emphasis theirs.)

The Supreme Court, although agreeing that

"* * * the possiblity that a particular job might be seriously injurious to a handicapped person's health comes within the terms of ORS 659.425 as well as the person's outright inability to perform it[,]" (280 Or at 168.)

preferred a middle ground, stating:

"* * * [T]he Commissioner raises the standard beyond the policy of the statute when he requires a 'high' probability of incapacitation, while the mere 'reasonable possibility' expressed by the Court of Appeals lowers it too far.

"It is our conclusion that the legislature intended by the statutory language to impose upon an employer the obligation not to reject a prospective employee because of a physical or mental handicap unless there is, because of the defect, a *probability* either that the employee cannot do the job in a satisfactory manner or *that he can do so only at the risk of incapacitating himself.* * * *" 280 Or at 168-69. (Emphasis supplied.)

We understand PMT to raise two issues regarding the standard applied by the Commissioner: first, the extent of risk of injury or incapacitation due to the handicap; and, second, the point in time to be considered in evaluating the risk. With respect to the relevant point in time, the Commissioner stated in her opinion:

"* * * [I]t is this forum's opinion that risk of injury or incapacitation should mean current or present risk of injury. * * *"

With respect to the extent of risk to be shown, the Commissioner applied a standard of "probability of incapacitation."[2]

---

[2] The Commissioner's opinion did not directly address this issue, but it stated:

"Specifically at issue is the meaning of the phrase '. . . a probability . . . that he can do so only at the risk of incapacitating himself.' In setting the standard the Oregon Supreme Court rejected the Commissioner's Order which required a showing of 'high' probability of incapacitation as well as the Court of Appeals standard of 'reasonable possibility' of incapacitation. * * * At least in this regard, then, the determination of probability appears to be left to the testimony of experts. * * *"

■ At the outset we must consider our function on review of the Commissioner's standard. We conclude that the statutory standard represents an "inexact" statutory term, rather than a "delegative" one, and therefore our task is to determine whether the agency's application of the statute in this case reflects an interpretation that is consistent with the legislative policy. *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980).[3] We review for error of law under ORS 183.482(8)(a), and we must uphold the order unless the agency has "erroneously interpreted a provision of law," even if we would have made a different interpretation. *Springfield Education Assn. v. School Dist, supra,* 290 Or at 234.

■ In our review of the Commissioner's standard we are called on to interpret and apply the Supreme Court's standard.[4] With respect to the extent of risk of incapacitation,[5] we take as our starting point that the court's phrase "probability * * * that the employee * * * can do [the job] only at the risk of incapacitating himself" (280 Or at 168-69) must be interpreted to require a greater showing of risk than our standard, rejected by the Supreme Court, of "reasonable medical possibility that the [employe] * * * could experience injury." 28 Or App at 751. PMT here interprets the Supreme Court's language to the effect that it must only show that the *risk* of incapacitation is probable, rather than that incapacitation is probable. It argues that the evidence in this case showed a *certain* risk of incapacitation and, therefore, it did not violate the law in discharging McKay. However, we agree with the Commissioner that

---

[3] The parties are in agreement on this point. The Supreme Court apparently applied this standard of review when it construed ORS 659.425(1) in *Montgomery Ward v. Bureau of Labor, supra,* but we note that that decision preceded *Springfield Education Assn. v. School Dist., supra,* and *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979).

We base our conclusion on factors including the language to be construed ("prevents the performance of the work involved") and the inclusion in the statutory scheme of a statement of policy. ORS 659.405. *See Springfield Education Assn. v. School Dist., supra.*

[4] We previously dealt with the standard when we reconsidered *Montgomery Ward v. Bureau of Labor* on remand, 42 Or App 159, 600 P2d 452, *rev den* 288 Or 81 (1979). However, our opinion there is not dispositive, because we found subtantial evidence to support a finding that the claimant could do the job "without the risk of incapacitating himself." Time and extent of risk were not considered.

[5] On occasion the parties and the Commissioner use the word "injury" interchangeably with the word "incapacitation." Because the Supreme Court's standard was phrased in terms of "incapacitation," we use that word.

the Supreme Court's language cannot be taken literally. The interpretation urged by PMT makes little sense; it would require, in essence, the evaluation of a chance of a chance. In many jobs *any* employe has a *risk* of incapacitation and the *probability of a risk* of injury. In rejecting our "reasonable possibility" standard, the Supreme Court was setting a higher one.[6] Bearing in mind the standards rejected by the Supreme Court in *Montgomery Ward,* we conclude that the applicable standard is "probability of incapacitation."[7]

We next consider the point in time at which the probability of incapacitation is relevant. PMT argues that because McKay's condition was progressive, his increased risk of incapacitation in the future should be considered and not just the extent of the current risk. We conclude that the Commissioner was not in error in considering the employe's risk of incapacitation at the time of rejection. To refuse to allow a discharge to be based on an employe's risk of injury in the future is consistent with the statute's policy. At the time of McKay's discharge, ORS 659.405 provided in relevant part:

> "(1) It is declared to be the public policy of Oregon to guarantee physically and mentally handicapped persons the fullest possible participation in the social and economic life of the state, to engage in remunerative employment * * *.

> "(2) The right to otherwise lawful employment without discrimination because of physical or mental handicap where the reasonable demands of the position do not require such a distinction * * * [is] hereby recognized and declared to be the [right] of all the people of this state. It is hereby declared to be the policy of the State of Oregon to protect these rights and ORS 659.400 to 649.435 shall be construed to effectuate such policy.[8]

---

[6] Further, in rejecting the Commissioner's "high probability of incapacitation" standard, the Supreme Court stressed the word "high" by placing quotation marks around that word only, indicating that the Court's objection to the standard was due to that particular word.

[7] PMT constructs scenarios in which one could be forced to hire an airline pilot with an even chance of a heart attack or a construction worker who has an even chance of incapacitating himself and whose job would require work on a high rise or scaffold with other employes. We do not decide the extent to which the safety of others may affect the standard expressed in *Montgomery Ward.*

[8] The words "physical(ly) or mental(ly)" preceding "handicap(ped)" were deleted in 1979. Or Laws 1979, ch 640, § 2.

To deny the opportunity to work when a risk is less than probable would contravene the policy of the statute to guarantee "the fullest employment of handicapped persons which is compatible with the reasonable demands of the job." *Montgomery Ward v. Bureau of Labor, supra,* 280 Or at 168. Because an employe with the present ability to work would be prevented under PMT's analysis from doing so by an impairment that would not be present until some time in the future, the expressed policy of the statute would not be met. An employer is not prevented from discharging a handicapped employe at a later time when there is a basis for determining that the risk of incapacitation has increased to a probability.

 PMT also challenges the Commissioner's "Ultimate Finding of Fact" that:

> "At the time of his rejection, Mr. McKay had the ability to perform the duty of heavy-duty truck driver at no higher risk of injury or incapacitation than others."

We review for substantial evidence in the record, ORS 183.482(8)(c), and agree that the finding that McKay faced no greater risk than others is not supported by substantial evidence.[9] PMT contends that reversal is therefore required, because the finding was part of the basis on which the Commissioner purported to justify her decision. An erroneous but immaterial finding provides no basis for reversal. *Kokotan v. Emp. Div.,* 30 Or App 391, 567 P2d 138 (1977). Even if McKay's risk of injury at the time of discharge was greater than that of the general population because of his handicap, the Commissioner's reasoning and other findings demonstrate that employer was not thereby justified in discharging him. One of the Commissioner's findings of fact was:

> "e) Although there is a medical probability in excess of 50% that Mr. McKay could perform the duties of a heavy-duty truck driver without experiencing back problems, Dr. Bird would encourage him to pursue another vocation which presents less risk of injury or incapacity."

---

[9] Two of the three physicians who testified stated that because of his back defect McKay was at a greater risk of injury than the general population. The third testified that McKay was at "increased risk," but it is not clear to whom or what the risk was compared. None of the physicians located the risk at any point in time. The Commissioner argues that the finding is supported by evidence of McKay's trouble-free work history; however, the fact he may not have experienced problems is not necessarily probative of the medical risk of injury.

We can determine from her opinion that she relied on the above finding in concluding that McKay had the current ability to perform the job and that employer therefore unlawfully discharged him. The finding relied on is supported by substantial evidence.

Affirmed.