Argued and submitted March 19, affirmed July 30, reconsideration denied October 31, petition for review denied December 16, 1986 (302 Or 460)

# BROWN,
*Respondent,*

*v.*

# CITY OF PORTLAND,
*Appellant.*

(A8304-02160; CA A34833)

722 P2d 1282

Richard A. Braman, Portland, argued the cause and filed the the briefs for appellant.

James S. Coon, Portland, argued the cause for respondent. With him on the brief was Aitchison, Imperati, Paull, Barnett & Sherwood, P.C., Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

## DEITS, J.

In this unlawful employment practice case, the City of Portland appeals from a judgment awarding plaintiff injunctive relief, back pay and attorney fees pursuant to ORS 659.121(1).[1] The trial court found that the city committed an unlawful employment practice in discharging plaintiff because of a physical impairment which did not prevent the performance of the work involved. ORS 659.425(1).[2] We review *de novo, Millsap v. Eugene Care Center,* 68 Or App 223, 228, 682 P2d 795, *rev den* 297 Or 547 (1984), and affirm.

Plaintiff was hired as a probationary police officer on April 8, 1981, after he had passed qualifying examinations, including physical examinations. He spent the first three months at the state police academy and the next two and one-half months in training on the street with an experienced police officer. In September, 1981, he was recommended for advancement to the third phase of recruit training, the advanced academy of the Portland Police Bureau. In the physical pretest for that academy, he received a fitness category rating of "excellent."

In October, 1981, the commanding officer of the training division sent a memorandum to the commanding officer of the personnel division indicating that plaintiff had been perceived as having physical difficulties which might cause him to be a liability to the city and to fellow officers. The specific problems identified involved his left knee and his vision. The memorandum indicated that plaintiff had filed a

---

[1] ORS 659.121(1) provides, in part:

"Any person claiming to be aggrieved by an unlawful employment practice prohibited by ORS 659.030, 659.035, 659.227, 659.270, 659.295, 659.330, 659.340, 659.410, 659.415, 659.420 or 659.425 may file a civil suit in circuit court for injunctive relief and the court may order such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employes with or without back pay."

[2] ORS 659.425(1) provides, in pertinent part:

"(1) For the purpose of ORS 659.400 to 659.435, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved * * *."

disability claim when his knee swelled after a running exercise in May. He had also been observed putting on a knee brace before a defensive tactics session at the academy in September. The memorandum noted that plaintiff's medical reports revealed that operations had been performed on his knee in 1978 and 1980. The medical reports also indicated that his uncorrected eyesight was below police bureau standards. The memorandum concluded that a more thorough examination was necessary to determine whether plaintiff met the minimum standards of the Portland Police Bureau.

In response to the memorandum, plaintiff was ordered to undergo physical examinations by defendant's physicians. The industrial medicine practitioner who examined plaintiff's knee stated that he "would not recommend [plaintiff's] employment as a police officer because of surgery, recent symptomatology, and X-ray findings of early degenerative diseases in the joint." Plaintiff was also examined by an ophthalmologist, who indicated that, although his uncorrected eyesight was indeed below minimum standards adopted by the police bureau, he did not see any limitation to plaintiff's ability to perform his duties as a probationary police officer at that time.

On the basis of those two reports, plaintiff was terminated on November 4, 1981. He then filed a complaint with the state Civil Rights Division, which found that there was substantial evidence of discrimination based on a physical handicap. The parties' attempt at conciliation failed when defendant declined to reinstate plaintiff after further physical examinations in 1983. Plaintiff then filed this action.

Defendant sets forth eight assignments of error which concern specific evidentiary rulings, findings and conclusions of the trial court. Essentially, however, two issues are presented on *de novo* review: (1) what is the proper standard to be applied in determining whether a covered employer has committed an unlawful employment practice; and (2), applying the standard to this case, did the employer commit an unlawful employment practice?

In determining whether a discharge for a physical impairment constitutes an unlawful employment practice under ORS 659.425(1), the focus of the inquiry is whether the

employe is actually prevented by the impairment from adequately performing work duties. As we explained in *Quinn v. Southern Pacific Transportation Co.,* 76 Or App 617, 711 P2d 139 (1985), *rev den* 300 Or 546 (1986), the standard for that determination is

> "whether, under all the circumstances, there is a *reasonable probability* that the applicant's condition renders him unable to perform the job duties in a manner which will not endanger himself or others." 76 Or App at 631-32. (Emphasis in original.)

The basis for the standard was first articulated by the Supreme Court in *Montgomery Ward v. Bureau of Labor,* 280 Or 163, 570 P2d 76 (1977), in interpreting a former version of ORS 659.425(1). We further clarified the standard in *Pac. Motor Trucking Co. v. Bur. of Labor,* 64 Or App 361, 668 P2d 446, *rev den* 295 Or 773 (1983), where we held that only the *present* risk of injury or incapacitation, not the risk of injury or incapacitation in the future, could be a proper basis for a discharge.

■    Defendant argues for the application of a very different standard. It asserts that discharge because of a physical impairment is not unlawful if the discharge is reasonable in light of the information available to the employer at the time. The Oregon Court clearly rejected that standard in *Montgomery Ward v. Bureau of Labor, supra:*

> "The question whether the employer acted in good faith or on reasonable grounds goes to the propriety of a sanction, but it does not control the employee's employment rights under the statute. * * * As we read the Act, there is nothing therein to indicate that it was the intention of the legislature to exclude from the purview of the Act employers who acted in good faith and upon reasonable appearances. The emphasis is entirely upon whether the applicant is capable of fulfilling the job requirements." 280 Or at 169.

Defendant relies on its "reasonableness in light of information available" standard to argue that evidence concerning the employe's ability to perform the job not available to employer at the time when it made its decision should be excluded. We disagree. Because the reasonableness of the employer's action is not a factor in determining whether an employe was unlawfully discharged, evidence of ability to perform the work at the time of discharge is admissible, even if

it was not available to the employer at the time of discharge.

■ Defendant also relies on its reasonableness standard in arguing that the standard enunciated in *Pac. Motor Trucking Co. v. Bur. of Labor, supra,* in 1983 should not apply to a discharge that occurred in 1981. Again, defendant misapprehends what constitutes an unlawful employment practice under ORS 659.425(1). It may have reasonably believed that a discharge was not unlawful if it was based on a probability of *future,* rather than present, injury or incapacitation. However, as we have noted, the reasonableness of defendant's belief is not the issue.

Defendant also argues that, because the physical impairments of a police officer may involve public safety as well as the employe's well being, the proper standard for an employment discrimination claim should include the "enhanced risk to others" exception expressed in the Bureau of Labor's administrative rules.[3] Defendant's argument is answered by our disposition of the public safety issue, in the context of vision tests for a common carrier employer, in *Quinn v. Southern Pacific Transportation Co., supra*:

"It is clear that, whether an applicant's own personal safety or that of others is in question, the Act requires an individual assessment of the safety risk.

"Applying that principle to this case, we conclude that the 'probability' standard enunciated in *Montgomery Ward* adequately protects common carrier employers from excess personal injury liability, and also protects the public and handicapped individuals from harm." 76 Or App at 631.

Our *de novo* inquiry is whether there is a reasonable probability that, at the time of the discharge, plaintiff would

---

[3] OAR 839-06-230 provides:

"(1) Notwithstanding other provisions of these rules, a position which by its very nature includes an inherent risk of injury or incapacitation to co-workers or the general public need not be filled by a handicapped individual if, even with reasonable accommodation, the inherent risk is materially enhanced because of the individual's impairment.

"(2) To meet the provisions of section (1) of this rule it must be demonstrated that, as it affects the performance of the actual job duties, the individual's impairment with reasonable accommodation would result in a greater risk of injury or incapacitation to co-workers or the general public than is true for others qualified to perform such work and not so impaired."

be unable to do the job in a manner which would not endanger himself or others. With respect to the knee injury, there was no evidence that, when plaintiff was discharged, there was a probability of *present* incapacitation. The only statements offered by defendant regarding probability of incapacitation involved plaintiff's condition two years after the discharge. The conclusory statement of defendant's examining physician in 1981 that he "would not recommend [plaintiff's] employment as a police officer," does not demonstrate a reasonable probability that plaintiff was, at that time, unable to perform his duties. Plaintiff offered the testimony of his treating physician, an orthopedic surgeon, that, as of the date of his discharge, he was able to perform his duties as a police officer and that the condition of his knee would not create a probability that plaintiff would be injured in the performance of his job. He also offered the statement of the police officer who had served as his "coach" to the effect that he was fully capable of performing all of the duties of a Portland police officer. There was no evidence that the knee condition might involve *sudden* incapacitation of the sort that might endanger others. On the contrary, the evidence suggests that plaintiff only suffered inflammation and discomfort following heavy exertion, such as five-mile running exercises. Inflammation was the source of the "disability claim" in May, 1981. The claim itself was merely a formality, because plaintiff was required to file it in order to leave the police academy campus to visit an orthopedist. It does not appear that the inflammation affected his ability to perform his work.

■    Defendant contends that plaintiff's vision was an independent alternative basis for discharge. Although his uncorrected vision was below the police bureau standards in effect when he was hired, those standards were modified before he was discharged; subsequent tests showed that he was within the modified standards. In any case, an employe's failure to meet test standards does not of itself foreclose a claim for unlawful employment practice. *See Quinn v. Southern Pacific Transportation Co., supra.* The statement of defendant's ophthalmologist indicates that, regardless of the adopted minimum standards, he was able fully to perform the duties of a police officer. We conclude that his vision did not create a reasonable probability that he could not safely perform his work duties.

Affirmed.