# McADAMS,
*Appellant,*

*v.*

# U & I, INC.,
*Respondent.*

## (MC 7247; CA A37603)

733 P2d 945

Kenneth D. Peterson, Jr., Hermiston, argued the cause and filed the briefs for appellant.

William J. Kuhn, Heppner, argued the cause for respondent. With him on the brief was Kuhn and Spicer, Heppner.

Before Warden, Presiding Judge, and Rossman and Deits, Judges.

DEITS, J.

## DEITS, J.

In this unlawful employment practice case, plaintiff appeals from a judgment denying him back pay and reinstatement to his position as a mechanic at defendant U & I, Inc.'s potato processing plant, after defendant terminated him due to a physical disability. On *de novo* review, we reverse and remand.

Plaintiff began work for defendant as a welder in 1975. At the time, he was 54 years old and had been working in mechanics and equipment maintenance for 35 years. In 1976, he injured his back on the job. He saw Dr. Pettee, who eventually gave him a release to return to work on the condition that he not lift over 40 pounds nor work in a stooped position. On returning to work, plaintiff gave the release to his supervisor, Metcalf. Metcalf wrote "PERS" on the release, took it to the personnel office and discussed the restriction with defendant's personnel manager. Nothing further happened at that time.

In 1977, plaintiff hurt his back again while trying to lift a 100-pound welder. He was treated by Dr. Andrews, who gave him a release form on which the doctor checked, "Patient is available for Full Duty." Defendant received a copy of Andrews' release. It is unclear whether plaintiff understood that he was fully released. In any event, he never again attempted to lift more than 40 pounds while working for defendant.

Plaintiff continued to work for defendant in various mechanic jobs. In March, 1981, he slipped and injured his back at home. He saw Dr. Peterson, a chiropractor, for the injury. Peterson discovered a longstanding spondylolisthesis condition in his back. Peterson recommended in writing that plaintiff be subject to a permanent 40-pound lifting restriction.[1] On the basis of that "new" restriction, defendant told plaintiff that he would not be physically capable of working as a mobile-equipment or wetline mechanic, because both jobs required lifting more than 40 pounds. Defendant offered plaintiff "trim-line" and "palletizer" jobs, both of which were not mechanics' jobs and paid less than mechanic positions. He

---

[1] Apparently, the original 40-pound restriction by Pettee in 1976 was missing from plaintiff's personnel file by 1981.

was told that he could "bid" for better paying positions as they became available but could not work as a mechanic. Plaintiff declined to accept the lower-paying jobs, and defendant terminated him.

In 1983, plaintiff filed a complaint in circuit court,[2] alleging employment discrimination and demanding reinstatement, back pay, attorney fees and punitive damages. The trial court dismissed the discrimination complaint, concluding:

> "In my view, despite plaintiff's improvisations and the fact that his co-workers knew of his limitations, the outcome of this case hinges on this: in 1977 his doctor notified the defendant that plaintiff was released to 'full duty.' * * * It would be a strained construction of the doctor's release to read the 'full duty' release to mean only to the extent to which he was capable.
>
> "* * * * *
>
> "The more credible evidence is that plaintiff could not perform his job with a lifting restriction. He couldn't do the job safely. In some areas the work was too close for assists to be used. The nature of the item to be repaired has to be considered as well as sanitation in a potato processing plant, i.e. using grease in changing tires. I must conclude that the 40-pound restriction was a reasonable requirement.
>
> "* * * * *
>
> "* * * His own safety and that of others had to be considered. Because the defendant couldn't accommodate plaintiff without undue cost or inconvenience and because he refused other job opportunities I conclude his discharge was valid. There was no valid evidence of discrimination in my view."

Plaintiff's principal assignment of error is that his discrimination claim should not have been dismissed, because there was no evidence that his injury prevented him from performing work as a mechanic. His cause of action for wrongful discharge is based on ORS 659.425(1):

> "For the purpose of ORS 659.400 to 659.435, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment

---

[2] Plaintiff had filed a discrimination complaint with the Civil Rights Division of the Bureau of Labor and Industries, which determined that there was "No substantial evidence of jurisdiction violative of ORS 659.410, 659.415 and 659.425."

or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a)   An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b)   An individual has a record of a physical or mental impairment; or

"(c)   An individual is regarded as having a physical or mental impairment."

The key question is whether, at the time of the discharge, there was a reasonable probability that plaintiff's condition rendered him unable to perform the job in a manner which would not endanger himself or others. The standard was elaborated by this court in *Pac. Motor Trucking Co. v. Bur. of Labor,* 64 Or App 361, 668 P2d 446, *rev den* 295 Or 773 (1983), a case factually quite similar. The employe there suffered from spondylolisthesis, which presented a risk of on-the-job injury. As in this case, the employe had been performing essentially the same work that he wished to continue but was dismissed when the back condition was discovered. The employer argued that it needed only to show that a *risk* of incapacitation was probable in order to discharge a handicapped employe. We rejected that position in favor of the standard of "probability of incapacitation." The employer also argued that, because spondylolisthesis is a progressive condition, the employe's *future* increased risk of incapacitation should be taken into account, as well as the present risk. In rejecting that contention, we said:

"Because an employe with a present ability to work would be prevented under PMT's analysis from doing so by an impairment that would not be present until some time in the future, the expressed policy of the statute would not be met. An employer is not prevented from discharging a handicapped employe at a later time when there is a basis for determining that the risk of incapacitation has increased to a probability." 64 Or App at 368.

More recently, we addressed a civil rights action in *Brown v. City of Portland,* 80 Or App 464, 722 P2d 1282 (1986), in which a police officer had a pre-existing knee injury and eyesight below that required by police minimum standards. There was evidence that neither of the impairments would

prevent the employe from performing his duties as a police officer, but he was discharged. We held:

> "In determining whether a discharge for a physical impairment constitutes an unlawful employment practice under ORS 659.425(1), the focus of the inquiry is whether the employe is actually prevented by the impairment from adequately performing work duties." 80 Or App at 467.

In this case the evidence does not support the conclusion that plaintiff was not capable of performing the work in a manner which would not endanger himself or others. Since his 1976 injury, except for the 1977 incident, he had been performing various mechanic jobs at the plant without lifting 40 pounds. This was confirmed, not only by plaintiff's testimony, but by the testimony of his supervisors as well. There were no complaints about the speed or quality of his work before he was terminated. There is no evidence that his inability to lift more than 40 pounds had caused any inconvenience or additional expense to defendant.

Defendant argues that lifting 40 pounds was a requirement of a mechanic's job. However, there was no such express requirement at the time of plaintiff's dismissal. A 40-pound lifting requirement was not part of a job description for any of the mechanic jobs. There were no written job descriptions at all for mechanics in defendant's plant until after plaintiff was terminated, at which time descriptions requiring the ability to lift more than 40 pounds were created.

Defendant also argues that the structural and equipment modifications necessary to accommodate plaintiff's impairment would be prohibitively expensive or impossible. However, as noted, there is no evidence that plaintiff's impairment had ever caused any additional expense or inconvenience to defendant. Defendant asserts generally that changes in the plant, including enlargements and an increase in the speed with which employes were required to work, would require such expenses. However, beyond defendant's general assertions, there is no evidence that, at the time of plaintiff's discharge, such expenses were necessary. We look to the "probability of *present* incapacitation." *Brown v. City of Portland, supra,* 80 Or App at 470. Defendant has not shown that

there was such a probability at the time of plaintiff's dismissal.[3] The possibility of future injury from the increased speed of defendant's operations, or other changes, is not itself a sufficient basis for discharge.[4]

Reversed and remanded.

---

[3] After plaintiff's reinstatement, defendant certainly has the right to determine whether, under the present requirements of the job, including the equipment used and the written job description, there is a reasonable probability that his present condition renders him unable to do the job in a manner which will not endanger himself or others.

[4] Plaintiff's other assignment of error concerns the admission in evidence of his personnel file. He argues that the document does not fall under the "business records" exception to the hearsay rule, because it lacks the necessary indicia of reliability and because defendant could not demonstrate a chain of custody for the file. The trial court properly admitted the evidence. The evidence showed that it was defendant's regular business practice to maintain personnel files. The fact that defendant's witness could not testify from personal knowledge as to how the records were made or kept does not preclude their admissibility, which was a matter of the trial court's discretion.