Submitted August 3, reversed and remanded September 26, 2012

Steven L. ZABRISKIE,
*Plaintiff-Appellant,*

*v.*

Ruth LOWENGART, M.D.,
*Defendant-Respondent.*

Jackson County Circuit Court
105046L3; A148740

290 P3d 299

Steven L. Zabriskie filed the brief *pro se.*

Brett A. Baumann and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C., filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Plaintiff, appearing *pro se* on appeal as he has throughout this medical malpractice litigation, challenges the trial court's grant of summary judgment in defendant's favor. The trial court's ruling was predicated on its determination that "plaintiff's case was filed beyond the statute of limitations and therefore must be dismissed." We conclude that the trial court erred in granting summary judgment to defendant on that basis. Accordingly, we reverse and remand for further proceedings.

In reviewing the trial court's ruling on defendant's summary judgment motion, we examine the record in the light most favorable to the nonmoving party (here, plaintiff) to determine whether there are genuine disputes of material fact and whether defendant is entitled to judgment as a matter of law. *Cortez v. Nacco Materials Handling Group*, 248 Or App 435, 437, 274 P3d 202 (2012). The record reveals that plaintiff visited defendant, a physician, on October 1, 2008, in association with a back injury he had suffered earlier that year. Defendant treated plaintiff on that single occasion. According to plaintiff, the treatment he received from defendant included a chiropractic procedure on the L5-S1 area of his spine that caused him permanent harm. Plaintiff saw another physician, Dr. Glen O'Sullivan, on October 31, 2008. O'Sullivan's chart notes from that date indicated that plaintiff might be "a candidate for combined decompression and stabilization of the L5-S1 segment." Plaintiff subsequently had surgery, which did not entirely relieve his symptoms.

Plaintiff filed his initial complaint against defendant on October 5, 2010, and an amended complaint in December of that year. In his amended complaint, plaintiff alleged that defendant had performed a chiropractic procedure on what turned out to have been a fractured vertebra:

> "[Defendant] performed a chiropractic maneuver/procedure * * * on the fractured lumbar vertebra at the level of L-5/S-1 of the plaintiff. The chiropractic maneuver/procedure consisted of a posterior to anterior double straight-armed thrust with the palm of the hand placed at the level of L-5/S-1."

Plaintiff's allegations of negligence included claims that defendant should not have performed the procedure on his back

once she had "identif[ied] an anterior step at L-5" and given that she possessed an MRI showing that plaintiff had potential instability in the L5-S1 area of his spine. Plaintiff claimed that defendant's negligent performance of the procedure caused him "irreversible nerve damage, chronic pain, and muscle spasms," resulting in disability. He also alleged that defendant's "chiropractic manipulation resulted in a progression of *** spondylolisthesis and slippage of the L-5 vertebra."[1]

Defendant moved for summary judgment on two grounds. First, defendant argued that she was entitled to judgment because plaintiff had filed his complaint outside the statutory limitations period, *i.e.*, more than two years after the treatment at issue. *See* ORS 12.110(4) ("An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered.").

Second, defendant argued that no competent evidence created a disputed material fact about the reasonableness of the evaluation, treatment, and diagnostic services that she had provided to plaintiff. Defendant submitted an affidavit in which she averred that she was "familiar with the degree of care, skill, and diligence expected of ordinarily careful orthopedic and occupational health physicians in Jackson County," and she opined that the care she provided to plaintiff "met or exceeded the care, skill, and diligence expected of [her] at that time." Anticipating that plaintiff—who, as noted, appeared *pro se*—might attempt to contradict her averments with expert testimony, defendant argued that plaintiff could create a genuine dispute of material fact only if he submitted an affidavit from an *attorney* stating that an expert had been retained who would testify in his favor. *See* ORCP 47 E.[2]

---

[1] We previously have characterized spondylolisthesis as "a progressive condition characterized by the slipping forward of one vertebra over another." *Pac. Motor Trucking Co. v. Bur. of Labor*, 64 Or App 361, 363, 668 P2d 446, *rev den*, 295 Or 773 (1983).

[2] ORCP 47 E provides, in part:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit or a declaration of the party's attorney stating that an unnamed

In the absence of such an affidavit, defendant argued, the trial court was required to accept the factual assertions in her declaration and she was entitled to judgment as a matter of law.

Plaintiff submitted evidence and argument countering both theories on which defendant sought summary judgment. With respect to the merits of his malpractice claim, plaintiff submitted two declarations that he signed himself and one declaration from his wife. In his first declaration, plaintiff asserted that he had at his disposal "expert medical testimony" that would support his medical malpractice allegations against defendant. In his second declaration, plaintiff averred that, as an experienced paramedic, he was "familiar with the degree of care, skill, and diligence expected of any medical professional in Jackson County." Plaintiff opined that defendant "negligently circumvented the care expected of any medical professional treating an orthopedic condition similar to the one afflicting [him]." In plaintiff's view, defendant's treatment exacerbated his existing back injury.

Plaintiff's wife's declaration included a description of how defendant had treated plaintiff and how plaintiff had responded to that treatment:

> "I witnessed [defendant] examine [plaintiff's] back while he was lying prone on the exam table. She physically felt his spine beginning between his shoulder blades and stopped three or four inches above his hips and said 'here it is,' 'you've got a step-off at L-5.' She then put both hands on his spine, one on top of the other and pushed down stating, 'there you go, I felt it move.' My husband typically suffers in silence. I however knew that the procedure hurt him from the expression on his face and the presence of sweat on his face and shirt.
>
> "* * * * *
>
> "[Defendant] subsequently sent my husband to Rogue Valley Medical Center for an x-ray and I accompanied him. While en route he told me that something wasn't right. He

---

qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion."

said that he 'felt some grinding' when she 'pushed on my back,' and 'some serious pain went down my leg.'

"* * * * *

"I witnessed my husband's symptoms before her exam and they consisted of some muscle spasms mostly on his right foot with some on his left. Since the exam I have witnessed both big toes contract in a bizarre manner to the inside and his little toes contract and curl under. They have continued in a chronic manner since the exam and seem to have gotten worse with a little more frequency."

Plaintiff also argued against defendant's theory that plaintiff's complaint was untimely. According to plaintiff, the two-year limitations period had not started to run on October 1, 2008, the day he received treatment from defendant, because he had not immediately realized that the treatment had injured him. Although he had felt pain and "grinding" on that day, plaintiff argued, those sensations were "subjective * * * and not conclusive, possibly within the accepted standard of care" for the type of treatment that defendant had administered. Accordingly, plaintiff asserted, the limitations period did not start to run until O'Sullivan determined, on October 31, 2008, that plaintiff might be "a candidate for combined decompression and stabilization of the L5-S1 segment." Because he filed his original complaint less than two years later, plaintiff argued, the complaint was timely.

Finally—and in light of defendant's argument that plaintiff could not invoke the expert-testimony provisions of ORCP 47 E except through an affidavit filed by an attorney—plaintiff requested additional time to respond to defendant's summary judgment motion so he could "retain expert counsel for the purposes of submitting documents and affidavits relative to 'admissible fact' and 'question of fact.'"

The trial court granted defendant's summary judgment motion on a single ground: that the two-year limitations period had expired before plaintiff filed his original complaint. The court explained in a written order that it had based that determination on the assertions in plaintiff's wife's declaration:

"Ironically, plaintiff's biggest problem at this stage of the proceeding is a declaration by [plaintiff's wife] which

states, among other things, that she was present with her husband on October 1, 2008 when he was examined by the defendant, that she could tell from plaintiff's reaction to [defendant's] treatment that 'the procedure hurt him,' that plaintiff told her he felt some injury when defendant pushed on his back, and that since [defendant's] exam she has witnessed problems which 'have continued in a chronic manner since the exam....' *** [T]he declaration establishes that plaintiff knew or should have known that he was injured on October 1, 2008."

Because plaintiff had not filed his complaint until October 5, 2010, the court determined, the "case was filed beyond the statute of limitations and therefore must be dismissed." Given that ruling, the trial court did not address plaintiff's request for an extension of time to submit additional evidence. The trial court entered judgment for defendant, and plaintiff appealed. On appeal, the parties generally reiterate the arguments they made below.

We start by reviewing the circumstances that trigger the two-year limitations period that applies to medical malpractice claims in Oregon. Under ORS 12.110(4), a discovery rule applies to that kind of claim. *Gaston v. Parsons*, 318 Or 247, 254, 864 P2d 1319 (1994). That is, under ORS 12.110(4), a plaintiff has two years in which to file a complaint after he or she first discovered the injury that allegedly arose from a medical treatment or, "in the exercise of reasonable care," should have discovered it.[3] In determining when the two-year period began to run in a particular case, the specialized meaning of the word "injury" must be kept in mind. As used in ORS 12.110(4), "injury" does not refer simply to ordinary physical harm, but means a *legally cognizable* harm" that "consists of three elements:

---

[3] ORS 12.110(4) provides, in its entirety:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

(1) harm; (2) causation; and (3) tortious conduct." *Gaston*, 318 Or at 255 (emphasis added). Each of those elements comes into play in determining when a plaintiff should have known, through the exercise of reasonable care, that he or she had been injured:

> "To discover a particular element of legally cognizable harm, the plaintiff does not need·to know to certainty that each particular element exists. The discovery rule is designed to give plaintiffs a reasonable opportunity to become aware of their claim. Actual knowledge that each element is present is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run. We believe that a quantum of awareness between the two extremes is contemplated by the statute. Therefore, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a *substantial possibility* that each of the three elements (harm, causation, and tortious conduct) exists."

*Id.* at 255-56 (citation omitted; emphasis added).

In reviewing the trial court's grant of summary judgment to defendant, our role is "to determine if a genuine issue of material fact exists as to when plaintiff discovered or in the exercise of reasonable care should have discovered his 'injury,' as that word is used in ORS 12.110(4)." *Id.* at 252. In this context, as in others, "[a]pplication of the discovery rule presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time there- after." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 278, 265 P3d 777 (2011) (legal malpractice case). That is, the defendant who moves for summary judgment on statute of imitations grounds can prevail only if he or she establishes that, on the record before the court on summary judgment, the plaintiff's complaint was untimely as a matter of law.

In this case, the evidence does not compel a finding that plaintiff knew or reasonably should have known, on the day that defendant treated him, that she had caused him a legally cognizable injury. True, plaintiff does not dispute that he was in pain, reported a "grinding" feeling to his wife,

and told her that "something wasn't right" immediately following his treatment. But we cannot say, as a matter of law, that a patient who experienced a grinding sensation and pain during a chiropractic procedure immediately should have recognized a "substantial possibility" that he was the victim of professional malpractice. *See Gaston*, 318 Or at 256-57 ("A reasonable person that experiences symptoms that are incidental to a particular medical procedure may not be aware that he or she has been a victim of tortious conduct."); *DeNucci v. Henningsen*, 248 Or App 59, 69 n 9, 273 P3d 148 (2012) ("we do not impute to the patient knowledge of the doctor's negligence immediately upon the patient's realization that he or she suffers some pain or incapacity that might be attributable to the surgery, properly performed"). That is particularly true in circumstances like those presented by this case, where, according to plaintiff, defendant said "there you go, I felt it move," as she performed the chiropractic procedure—a statement that reasonably could be construed as assuring plaintiff that any sensations of movement were normal. *Cf. Gaston*, 318 Or at 258 (a factfinder could find that the plaintiff reasonably relied on a physician's post-operative assurances that symptoms were temporary). On this record, a factfinder could determine that plaintiff merely was reporting passing side effects that did not make him aware, and would not necessarily have made a reasonable person aware, of a substantial possibility that he was the victim of defendant's tortious conduct. *See Frohs v. Greene*, 253 Or 1, 7, 452 P2d 564 (1969) (because "immediate, adverse side effects commonly result from medical treatment given to gain long-range and more important benefits," the plaintiff's knowledge of such side effects did not put the plaintiff on notice, as a matter of law, of the defendant's tortious conduct).

Nor are we persuaded that plaintiff's assertion that "something wasn't right" establishes, as a matter of law, that plaintiff knew on the day defendant treated him of a substantial possibility that she had committed medical malpractice. This is not a case in which the plaintiff knew that he had suffered a "distinct injury" like having his internal organs perforated during surgery or having gauze left in a surgical site. *But see Greene v. Legacy Emanuel Hospital*,

335 Or 115, 128, 60 P3d 535 (2002) (in part because the "perforations to plaintiff's uterine wall and colon were not momentary adverse side effects that commonly result from the abortion procedure to which plaintiff had consented" and "[n]othing about the abortion procedure or its adverse effects masked the injury that plaintiff suffered," the limitations period on the plaintiff's medical malpractice claim began to run when the plaintiff "learned, soon after surgery, that the perforations had occurred"); *Laird v. Stroot*, 188 Or App 118, 125, 71 P3d 105 (2003) (the statute of limitations began to run, as a matter of law, when the plaintiff learned that he had suffered a "distinct injury," *i.e.*, gauze having been left in his foot after an operation). In those kinds of circumstances, the injury is so clear and so obviously not the intended result that the patient's awareness of the injury itself may be enough to establish, as a matter of law, the patient's knowledge of a substantial possibility of tortious conduct.

The grumblings of a person who has just undergone a painful medical procedure do not, however, conclusively demonstrate knowledge that is analogous to the awareness of tortious conduct that may be imputed to a person who knows that he or she has suffered a "distinct injury" like a perforated organ. *Cf. Gaston*, 318 Or at 256 ("a mere suspicion is insufficient to begin the statute of limitations to run"). To the contrary, a factfinder could determine, as plaintiff urges, that plaintiff had no reason to know that defendant had acted negligently in performing a chiropractic procedure on the L5-S1 area of his spine until he learned from O'Sullivan that he might have a spinal instability at that location. Because O'Sullivan did not examine plaintiff until October 31, 2008, less than two years before plaintiff filed his complaint, there is a genuine dispute of fact regarding the timeliness of that filing. The trial court erred in granting summary judgment to defendant on the ground that the statute of limitations had run.

Defendant argues, in the alternative, that she was entitled to summary judgment on the ground that the record includes no evidence from which a juror could find that defendant violated the applicable standard of care. That argument is premature. In response to defendant's

summary judgment motion, plaintiff requested additional time to submit expert evidence, in compliance with ORCP 47 E, that would be sufficient to create a genuine dispute of material fact. The trial court expressly declined to rule on that request, given its resolution of the case on defendant's statute of limitations theory. Consequently, the possibility remains open that plaintiff will have an opportunity on remand to submit additional evidence countering defendant's assertion that she provided plaintiff with treatment that "met or exceeded the care, skill and diligence expected" of her. We decline to address defendant's alternative summary judgment theory on a record that may not yet be fully developed.

Reversed and remanded.