Argued and submitted May 8, 1987, affirmed June 15, reconsideration denied
August 5, petition for review denied August 30, 1988 (306 Or 527)

**BLUMHAGEN,**
*Appellant,*

*v.*

**CLACKAMAS COUNTY et al,**
*Respondents.*

(82-10-196; CA A39129)

756 P2d 650

Robert E. Nelson, Gresham, argued the cause and filed the brief for appellant.

Miles A. Ward, Assistant County Counsel, Oregon City, argued the cause for respondents. With him on the brief was Clackamas County Counsel, Oregon City.

Before Buttler, Presiding Judge, and Rossman and Deits, Judges.

DEITS, J.

**DEITS, J.**

In this unlawful employment practice case, plaintiff argues that defendants violated the Handicapped Persons' Civil Rights Act by discharging her and failing to reinstate her to her former position as a deputy sheriff or, in the alternative, to another "available and suitable" position after she sustained a compensable on-the-job injury. ORS 659.415; ORS 659.420; ORS 659.425.[1] The trial court found for defendants, and plaintiff appeals.[2] We review *de novo, Brown v. City of Portland,* 80 Or App 464, 722 P2d 1282, *rev den* 302 Or 460 (1986), and affirm.

■ Plaintiff was employed as a deputy sheriff 103, which is the civil service classification for the patrol deputy position. While on duty, she sustained a permanent injury in an automobile accident. As a result of the injury, she suffers headaches and occasional numbness in her left arm which affects her ability to hold and grasp things. Her treating physician and a consulting physician advised defendants that she would always be susceptible to serious injury to her head and neck and that, due to that condition, she should not be reinstated to her former position as a patrol deputy, which requires that she be able to work in the field on patrol, or to any other position where she could sustain a blow to her head or neck.[3] There was evidence that, while on patrol, a deputy is always subject to the threat of violence and injury.

Plaintiff's physician advised defendants that she could do clerical work. At the physician's request, defendants assigned her to a light duty desk officer position, which is a temporary position that rotates every 30 to 60 days but can be extended. It is staffed by officers who are temporarily disabled or are suffering from "burnout." In February, 1982, after nine months assignment as a desk officer, plaintiff was notified that, due to the temporary nature of the position and her

---

[1] Plaintiff presented evidence on four other claims. After she rested, the court struck all four claims, and plaintiff also assigns error to those rulings. We hold that the trial court properly struck those claims.

[2] This case was tried before ORS 659.121(2) was amended to allow for jury trials at the request of any party. Or Laws 1987, ch 822, § 1.

[3] On the basis of opinions of plaintiff's doctors that she could not return to her position as a patrol deputy, plaintiff was awarded permanent partial disability by the Worker's Compensation Board.

permanent disability, she would be laid off from her position as a deputy sheriff 103.[4]

After receiving the layoff notice, plaintiff demanded reinstatement to her former position or another suitable position, pursuant to ORS 659.415 and ORS 659.420. Defendants discussed alternatives to layoff with her and extended the date of layoff until May 31, 1982. Two months after plaintiff was laid off, she was offered a position as a community service officer (CSO) in the department. The CSO provides backup for desk officers by taking telephone reports and dealing with walk-in complaints. Unlike the desk officer, the CSO does not wear a uniform and cannot make arrests. The position does not have the same degree of responsibility as the patrol deputy and pays approximately half the salary. Two months after the offer (during which time defendants held the position open for her), she accepted it.

Plaintiff argues that defendants violated ORS 659.415(1) by not reinstating her as a deputy sheriff 103. That statute provides that a worker who sustains an injury shall be reinstated upon demand, "provided that the position is available and the worker is not disabled from performing the duties of such position." Here, plaintiff has not presented evidence which shows that she is physically capable of performing the duties of a patrol deputy.[5] Rather, the evidence establishes that plaintiff cannot perform all of the duties of a patrol deputy, because she has a permanent condition that renders her susceptible to further injury and prevents her from working in the field on patrol. In fact, plaintiff testified that she feels the same physically now as she did in 1982 and that, in the light of her disability, it would be unfair to other deputies on patrol to return her to her former position. We find that plaintiff is not able to perform the duties of her former job and

---

[4] Although plaintiff argues that she was not laid off, but was terminated, we concur with the trial court's determination that she was laid off.

[5] Under the statute, a doctor's certificate approving an employe's return to the position is *prima facie* evidence that the worker is able to perform the duties. At the same time as plaintiff, several other patrol deputies received layoff notices. The layoff dates for plaintiff and the other deputies were extended a number of times to allow them to present additional medical evidence concerning their physical fitness to perform the job. Those employes who brought in physician's certificates stating that they were fit to return to work were retained, and those who did not were laid off.

hold that defendants did not unlawfully refuse to reinstate her to her former position.

■     Plaintiff next asserts that defendants violated ORS 659.420 by failing to reemploy her in another position which was "available and suitable." ORS 659.420(1) provides:

> "A worker who has sustained a compensable injury and is disabled from performing the duties of the worker's former regular employment shall, upon demand, be reemployed by the worker's employer at employment which is available and suitable."

Plaintiff contends that, although her present position as a CSO was available, it is not suitable, because of the substantial difference in salary, duties and responsibilities between it and her former position. In *Carney v. Guard Publishing Co.*, 48 Or App 147, 152, 616 P2d 548, *mod* 48 Or App 927, 630 P2d 867, *rev den* 290 Or 171 (1980), we recognized that, although the policy of the Handicapped Persons' Civil Rights Act is "the fullest employment of handicapped persons which is compatible with the reasonable demands of the job * * *, [a]n employer's statutory duty to reemploy injured workers is not absolute." The act does not demand that an employer create positions or substitute an injured employe for a non-injured one. *Carney v. Guard Publishing Co., supra.* Neither is an employer obligated to offer a selection of equally suitable jobs or hold its offer open for an unreasonable period of time. *Carney v. Guard Publishing Co., supra.* The relevant factors in determining whether a position is suitable include the employe's educational background and work experience, previous salary, previous level of responsibility, record with the employer, the nature and severity of the disability and the employer's size, diversity and hiring needs. *Carney v. Guard Publishing Co., supra.*[6]

     As a CSO, plaintiff performs some of the duties and uses some of the skills that she acquired as a deputy sheriff

---

[6] Although this portion of the decision in *Carney* was withdrawn, because the appellant had withdrawn the argument, our discussion is still helpful as guidance in this case. In addition, the current administrative rules of the Bureau of Labor and Industries, adopted in 1983, also include these factors. OAR 839-06-145. Although the rules are not specifically applicable to this case, which concerns events that occurred in 1982, the courts have used them for guidance. *See Knapp v. City of North Bend*, 304 Or 34, 741 P2d 505 (1987).

103. The duties of the position are consistent with her physician's opinion of her capabilities. Although her salary as a CSO is half that of a deputy sheriff 103, and she does not have the same level of responsibility that she previously had, there were no other positions which were "available and suitable" between the time when she was laid off and when she accepted the CSO position.

■ At the time plaintiff was laid off, there were a limited number of one- and two-year job assignments in the sheriff's department which rotated among the patrol deputies.[7] Plaintiff argues that those positions, unlike the CSO position, were suitable, because they offered duties and compensation which were comparable to her former position and were basically office positions. However, on this record, we cannot discern whether any of those positions was available at the time when plaintiff was offered the CSO position. More importantly, because those positions rotate among patrol deputies, they require the basic deputy sheriff 103 classification and an ability to return to patrol work. Because plaintiff is not physically capable of working in a patrol position, these positions are not suitable. There were also clerical positions within the department; however, those positions are comparable to the CSO position in salary and would afford her even less responsibility and fewer duties relative to her skills than the CSO position.[8]

■ After plaintiff accepted the CSO position, defendants created several new positions in the property room, which did not require the deputy sheriff 103 status and offered a higher salary. Plaintiff applied for one of the positions, but was not hired. However, once defendants offered plaintiff the CSO position, their statutory duty to afford her preference in hiring expired. *Carney v. Guard Publishing Co., supra,* 48 Or App at

---

[7] Only one of those positions does not rotate. That position is in crime analysis; it does not rotate because the individual in that position has received special training and developed expertise.

[8] In her brief, plaintiff states that there were other positions in the department, such as records clerk and storage clerk. However, there was no evidence of a records clerk position within the department, and the evidence was that the department did not have a storage clerk position. There was a position in central dispatch; however, on this record we cannot determine if it was available when plaintiff was offered the CSO position or whether she was qualified for the dispatch position. Additionally, there was evidence of a position in animal control. Other than the existence of the position, there is no evidence to indicate whether plaintiff wanted the position, if she was qualified for it or if it was available.

152. We hold that, due to the specialized and limited hiring needs of the department, the CSO position is suitable and that defendants did not violate ORS 659.420.

■ Plaintiff's final argument is that defendants unlawfully discriminated against her when they laid her off from her position as a patrol deputy. ORS 659.425(1)(a)(c) provides:

"For the purposes of ORS 659.400 to 659.435, it is an unlawful employment practice for any employer to refuse to hire, employ, or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"An individual is regarded as having a physical or mental impairment."

In determining whether a discharge for a physical impairment constitutes an unlawful employment practice, we must consider whether the employe is actually prevented by the impairment from adequately performing the duties of the position and, if so, whether the employe could perform the duties of the position if the employer made reasonable accommodations. ORS 659.425(1)(a)(c).

In determining whether an employe is prevented due to an impairment from adequately performing work duties,

"[o]ur *de novo* inquiry is whether there is a reasonable probability at the *time of discharge,* plaintiff would be unable to perform the job in a manner which would not endanger himself or others." *Brown v. City of Portland, supra,* 80 Or App at 469. (Emphasis supplied.)

*See also Quinn v. Southern Pacific Transportation Co.,* 76 Or App 617, 632, 711 P2d 139 (1985), *rev den* 300 Or 546 (1986). On the basis of the medical evidence, the degree of danger inherent in the deputy sheriff 103 position and plaintiff's statements, we find that, at the time plaintiff was laid off, there was a reasonable probability that plaintiff was unable to perform the patrol duties of the position without risk of injury to herself or others.

■ Plaintiff argues that, even if she cannot perform the

patrol duties of a deputy sheriff 103, she can perform the duties involved in the other positions which require the 103 status and which rotate. She argues that allowing her to work in one of those positions or to rotate among all of them, without having to rotate into a patrol position, would be a reasonable accommodation by defendants.

ORS 625.425 imposes an affirmative duty on the employer to make "reasonable accommodation" for an employe's physical or mental impairment. However, the evidence demonstrates that plaintiff's suggested accommodation would not result in the modification of one position to suit plaintiff's needs. Rather, due to the limited number of positions which rotate, plaintiff's suggestion would have a serious impact on the department's entire rotation program. The program allows patrol deputies who are suffering from "burnout" to find relief and remain on the job in a temporary position at their normal salary. It also allows deputies to be trained in all areas of the department. The evidence, including statements by plaintiff's own witness, is that rotating positions within the department promotes morale. We find that defendants' rotation program is a reasonable and legitimate means to guarantee effective police work. *See Simon v. St. Louis County,* 563 F Supp 76, 81 (ED Mo 1983), *aff'd* 735 F2d 1082 (8th Cir 1984). In the circumstances of this case, requiring defendants to make one of the positions permanent, or to allow plaintiff to rotate among all the positions without rotating into a patrol position, would impose an "undue hardship" on the program and, therefore, would not be a reasonable accommodation. OAR 839-06-205(8); OAR 839-06-245.[9]

Affirmed.

---

[9] In defining "reasonable accommodation," we adopt the "undue hardship" standard defined in the administrative rules adopted by the Bureau of Labor and Industries. OAR 839-06-205(8).