[Nos. 30108-0-I; 30444-5-I.   Division One.   July 26, 1993.]

BERNARD D. MOLLOY, *Appellant,* v. THE CITY
OF BELLEVUE, *Respondent.*

*Mark S. McCarty* and *Reaugh, Fischnaller & Oettinger,* for appellant.

*Richard L. Andrews, City Attorney,* and *Patrice C. Cole* and *David E. Kahn, Assistants,* for respondent.

*David Snyder* on behalf of Washington State Council of Police Officers, amicus curiae for appellant.

COLEMAN, J. — Bernard Molloy appeals the trial court's order of partial summary judgment, dismissing his claims against the City of Bellevue for wrongful termination and failure to accommodate him with alternate employment in the police department. Molloy argues that the trial court erred by (1) considering arguments raised for the first time in Bellevue's reply memorandum and concluding that there were no genuine issues raised regarding wrongful termination and (2) concluding that there were no genuine issues of material fact raised regarding whether Bellevue failed to reasonably accommodate him by offering employment on the police force. Bellevue cross-appeals, arguing that the trial court erred by concluding that a genuine issue of material fact existed regarding whether Bellevue reasonably accommodated Molloy by advising him of available nonpolice employment. We affirm in part and reverse in part.

Between July 1981 and August 1988, Bernard Molloy was employed as a police officer for the Bellevue Police Department. In November 1985, while responding to a call at a condominium complex, Molloy slipped on black ice and fractured his left ankle. In February 1986, after surgery to repair his ankle, Molloy was able to return to light duty, and he returned to full duty a few months later. Soon thereafter, however, his ankle began bothering him, and he was required to undergo a second surgery in April 1987. He returned to full duty as a patrol officer in August 1987. At that time, his physician, Dr. McDermott, believed that Molloy "[would] be left with a degree of permanent partial disability".

In March 1988, in order to close his workers' compensation file, Molloy had his ankle examined by Dr. Tokarchek. At that time, Molloy was suffering from soreness, swelling, and decreased range of motion in his ankle. Dr. Tokarchek concluded that Molloy had a 25 percent permanent partial impairment and that he was "not likely to remain reasonably continuously productive . . . in his current job description as a police officer".

Following Dr. Tokarchek's recommendation, the police department removed Molloy from his position as a patrol officer and placed him in a less physically demanding position. The department also informed Molloy that he would be terminated on May 31, 1988. In mid-May, the department offered him a position as a dispatcher, which he declined because it paid only one-half the salary he earned as a police officer and because he had decided to move to California to obtain his teaching credentials.

On April 16, 1990, Molloy brought this action against Bellevue, claiming that Bellevue failed to make reasonable efforts to accommodate his disability. On November 13, 1991, the trial court granted Bellevue summary judgment on the issues of wrongful termination and failure to accommodate with police employment. However, the court denied the part of the motion pertaining to Bellevue's failure to accommodate Molloy with nonpolice employment. Molloy appeals, and Bellevue cross-appeals.

We initially consider whether the trial court improperly considered arguments raised for the first time in Bellevue's reply memorandum.

A party moving for summary judgment must raise, in its opening memorandum, all the issues on which it believes it is entitled to summary judgment. *White v. Kent Med. Ctr., Inc. P.S.*, 61 Wn. App. 163, 168-69, 810 P.2d 4 (1991). Rebuttal documents "are limited to documents which explain, disprove, or contradict the adverse party's evidence." *White*, at 169. If, in its response memorandum, the nonmoving party discusses new issues without actually seeking summary judgment on them, these issues are not proper subjects for the moving party to rebut in its reply memorandum. *White*, at 169. Consequently, the trial court may not grant summary judgment to the moving party on these issues. *White*, at 169.

Here, the trial court granted summary judgment on the issue of wrongful termination, stating that "[t]here is no genuine issue as to any material fact bearing on the issue of whether Plaintiff was disabled in such a way as to be unable to perform the essential duties of a police officer." Molloy argues that summary judgment on this issue was improper under *White* because Bellevue initially moved for summary judgment only on the issue of failure to accommodate. Bellevue, on the other hand, argues that *White* does not control the present case because Molloy's complaint did not set forth a claim for wrongful termination. According to Bellevue, by raising the issue of wrongful termination for the first time in his response motion, Molloy was making a "veiled attempt" to amend his complaint to include this claim.

We agree with Bellevue that *White* does not apply to the present case. A complaint must apprise the defendant of the nature of the plaintiff's claims and the legal grounds upon which the claims rest. *Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962).[1] In the present case, Molloy's complaint states:

---

[1]*Christensen* is not cited by the parties.

> The plaintiff's condition constitutes a physical handicap within the meaning of RCW 49.60.030. The defendant has an affirmative duty under RCW 49.60.180 to reasonably accommodate the plaintiff. The defendant has discriminated against the plaintiff in compensation and other terms and conditions of employment by failing to reasonably accommodate the handicap in violation of RCW 49.60.180 and RCW 41.26.470. Discrimination has included, by way of illustration, but has not been limited to, terminating plaintiff's employment because of the presence of a physical handicap, failing to take affirmative measures to advise plaintiff of the existence of vacant positions . . .. The termination and discrimination constitutes an unfair employment practice in deprivation of plaintiff's civil rights as provided by RCW 49.60.180 and other relevant law.[2]

Molloy contends that "a major portion of his complaint claims that there was no need to accommodate him and that Bellevue simply discriminated against him because of his injury to his ankle." In other words, according to Molloy, the complaint sets forth the claim that despite his injury, Molloy was able to perform the duties of a police officer and, therefore, he was wrongfully terminated.

We do not believe that the complaint can fairly be construed to contain a separate claim for wrongful termination. The complaint begins with the assertion that "plaintiff's condition constitutes a physical handicap". It then sets forth the claim that Bellevue failed to accommodate Molloy's handicap. Nowhere in the complaint is it alleged that Molloy's condition did *not* constitute a physical handicap, that Molloy was capable of performing the duties of a patrol officer, or that there was no need to accommodate him. Consequently, Molloy cannot now claim that a genuine issue of fact existed

---

[2]RCW 49.60.030 contains Washington's declaration of civil rights and recognizes the right to be free from discrimination based on mental or physical handicap.

RCW 49.60.180(1) prohibits employers from discharging, refusing to hire, or otherwise discriminating against persons with mental or physical handicaps "[unless] the particular disability prevents the proper performance of the particular worker involved".

RCW 41.26.470 is entitled "Earned disability allowance — Cancellation of allowance — Reentry — Receipt of service credit while disabled — Conditions — Disposition upon death of recipient."

regarding whether he was capable of performing his duties as a patrol officer.[3]

Moreover, the record clearly shows that Molloy conceded he is disabled and unable to fully perform his duties as a patrol officer. For example, in its interrogatories, Bellevue asked Molloy to "[s]tate each and every fact on which plaintiff relies to support his allegation that plaintiff's condition constitutes a physical handicap within the meaning of RCW 49.60.030." Molloy answered that "[p]laintiff has a disability rating of 25% . . . *His condition prevents him from pursuing any occupation as a police officer as well as any other profession that includes prolonged use of his legs.*" (Italics ours.)[4] Thus, even if the complaint did contain a claim for wrongful termination, this claim was subsequently abandoned by Molloy. The more logical conclusion, however, is simply that Molloy's ability to perform the duties of a patrol officer was never an issue in the case. We therefore conclude that the trial court's granting of summary judgment on this issue was not in error.

The next issue Molloy raises is whether the trial court erred in concluding that there were no genuine issues of material fact regarding whether Bellevue failed to reasonably accommodate him by offering employment on the police force.

An employer has a duty to reasonably accommodate a handicapped employee. *Dean v. Municipality of Metro Seat-*

---

[3]We note, however, that the claims of wrongful discharge and failure to accommodate, although somewhat inconsistent, are not mutually exclusive. It would be entirely possible for an employee to file a complaint stating that (1) he or she was capable of performing the duties of the job and was therefore wrongfully discharged and (2) even if he or she was not capable of performing the duties of the job, the employer failed to reasonably accommodate him or her. However, as stated above, Molloy's complaint did not contain these alternate claims. Molloy's complaint mentions termination only as an illustration of Bellevue's failure to accommodate.

[4]In addition, Molloy testified in his deposition that there were times that he felt he was unable to perform his duties as a police officer.

*tle*, 104 Wn.2d 627, 632, 708 P.2d 393 (1985) (citing *Holland v. Boeing Co.*, 90 Wn.2d 384, 583 P.2d 621 (1978); RCW 49.60.180(1); WAC 162-22-080). This duty entails informing the employee of job openings for which he might be qualified. *Dean*, at 637. To establish a prima facie case of discrimination, a handicapped employee must prove (1) that he or she is handicapped, (2) that he or she was qualified to fill vacant positions, and (3) that the employer failed to take affirmative measures to inform the employee of these positions and to determine whether the employee was in fact qualified for them. *Dean*, at 639.

In determining whether a summary judgment motion was properly granted, an appellate court engages in the same inquiry as the trial court. *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 65, 837 P.2d 618 (1992). Summary judgment is appropriate only if, after viewing all the facts in a light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Molloy argues that there were many positions in the police department that were less physically demanding than the position of patrol officer and that Bellevue had a duty to offer him one of these less demanding positions. Bellevue, on the other hand, argues that it is the policy of the Bellevue Police Department that all noncivilian officers must be able to perform *all* the duties of a police officer. Therefore, according to Bellevue, Molloy's disability disqualified him from any police officer positions, even those less demanding than patrol officer. In addition, citing *Blumhagen v. Clackamas Cy.*, 91 Or. App. 510, 756 P.2d 650, *review denied*, 306 Or. 527 (1988) and *Coski v. City & Cy. of Denver*, 795 P.2d 1364 (Colo. Ct. App. 1992), Bellevue argues that requiring the police department to accommodate handicapped police officers with positions inside the police department would place an undue burden on the police department.

*Blumhagen* involved facts very similar to the facts of this case. The plaintiff, a patrol officer, was injured while on duty and was unable to continue working in that position. *Blumhagen*, at 512. As in the present case, the police department offered the plaintiff a civilian position that paid approximately half of what she had received as a patrol officer. *Blumhagen*, at 513. The plaintiff argued that she should have been retained as a police officer, but placed in a less demanding assignment. The court, however, rejected this claim because (1) the plaintiff did not establish that any positions were available at the time and (2) the positions required that the employee be able to perform patrol duty in order to rotate with patrol officers. *Blumhagen*, at 514-15.

The plaintiff in *Blumhagen* argued that the department should waive its rotation requirement in order to accommodate her. *Blumhagen*, at 517. The court disagreed, stating that the department's policy "allow[ed] deputies to be trained in all areas of the department" and prevented "burnout" among patrol deputies by allowing them to temporarily rotate out of that position while maintaining their normal salary. *Blumhagen*, at 517. Thus, the court concluded, accommodating the plaintiff by waiving the requirement that she be able to perform patrol duty would place an undue burden on the police department. *Blumhagen*, at 517.[5]

In *Coski*, the plaintiff was likewise injured and permanently disabled while working as a patrol officer. *Coski*, 795 P.2d at 1366. When she was denied a position within the police department, she filed a complaint with the Civil Rights Commission. The hearing officer noted that the police department had a policy that "all police officers must be able to fire a weapon and to make a forceful arrest", but concluded that, because some officers did not engage in these activities on a regular basis, they were not essential job functions. *Coski*, at 1367. The Court of Appeals reversed, stating:

---

[5]Molloy attempts to distinguish *Blumhagen* on the ground that it is the Bellevue Police Department's policy not to rotate officers unless the officer requests a transfer. However, by allowing patrol officers to request a transfer, this policy serves the same purposes as the policy in *Blumhagen*. .

Police officers must be able to take action to uphold their sworn duty to preserve the peace, protect life and property, and prevent crime. The infrequency with which a particular officer fires a gun or makes an arrest in furtherance of [his or] her duty does not eliminate the need to be capable of performing that duty. Thus, *we conclude that the ability to fire a weapon and to make a forceful arrest is an essential job function because it is reasonable to require this of all police officers.*

(Italics ours.) *Coski*, at 1367. The court also concluded that requiring the police department to waive the forceful arrest policy for the plaintiff was not reasonable because of the large number of police officers that are injured each year. As the court stated:

If all these officers were retained on the force, the number of positions available for able-bodied officers would eventually be significantly reduced, thereby endangering public safety in an emergency that required full mobilization of the police force.

*Coski*, at 1368.

■ We believe that the reasoning in *Blumhagen* and *Coski* applies equally well to the present case. The policy reasons behind the Bellevue Police Department's rule, the rotation policy in *Blumhagen*, and the "forceful arrest" rule in *Coski* are identical: All officers must "be able to perform all the duties of a police officer in order to carry out an officer's essential function of protecting the public and preserving the public peace." Although Molloy contends that this policy is discriminatory, he does not elaborate on this argument or cite to any authority that would support this assertion.[6]

We conclude that because of the police department's policy, Molloy's inability to perform his duties as a patrol offi-

---

[6]Molloy cites *Clarke v. Shoreline Sch. Dist. 412*, 106 Wn.2d 102, 122, 720 P.2d 793 (1986) for the proposition that, regardless of policy, an employer has a duty to accommodate. However, this case does not address the issue of whether the Bellevue Police Department's policy is sound.

In addition, Molloy attempts to distinguish *Coski* on the ground that the plaintiff in that case was unable to make a forceful arrest, whereas Molloy suffers from only a minor disability. However, although Molloy's disability is comparatively minor, he conceded in his deposition and in his interrogatories that it rendered him incapable of performing his duties as a patrol officer.

cer rendered him ineligible for any other noncivilian position in the department. Furthermore, we agree with Bellevue that it had no duty to exempt Molloy from this policy or to create a special position within the department for him. For these reasons, we hold that no genuine issue was raised regarding Bellevue's failure to accommodate Molloy with police employment.

The last issue we address is whether the trial court erred in concluding that a genuine issue of material fact existed regarding whether Bellevue reasonably accommodated Molloy by advising him of available nonpolice employment.

The elements of a prima facie case for failure to accommodate are set forth above. In addition to the employer's duty to reasonably accommodate a handicapped employee, the employee has a corresponding duty to cooperate with the employer by making the employer aware of his or her qualifications, by applying for all jobs that fit his or her abilities, and by accepting reasonable offers of employment. *Dean v. Municipality of Metro Seattle*, 104 Wn.2d 627, 637-38, 708 P.2d 393 (1985).

Molloy contends that the dispatcher position offered by Bellevue did not constitute reasonable accommodation because it paid only half his salary as a patrol officer. He further argues that after he refused the dispatcher position, Bellevue had a continuing duty to notify him of available civilian positions. We disagree.

When Bellevue offered Molloy the dispatcher position, he refused, stating unequivocally that he planned to move to California in order to obtain his teaching credentials. At no time did Molloy give any indication whatsoever that he was available for or interested in another position. Thus, Bellevue justifiably assumed that Molloy was not interested in exploring other employment options with the City.[7]

---

[7]Molloy argues that when Bellevue offered him the dispatcher position, he was told that it was the only job the City had to offer. However, it is clear from the record that Molloy had decided to move to California prior to the time that the dispatcher job was offered. Therefore, this statement could not have played a role in Molloy's decision to relocate to California.

We conclude that Bellevue's obligation to notify Molloy of other employment ended when Molloy expressed his intent to move to California. If Molloy was indeed interested in other employment with the City, he had a duty to somehow put Bellevue on notice of this interest. Because he failed to do so, he cannot now claim that Bellevue's failure to notify him of other job openings constituted a failure to accommodate his handicap. Therefore, we hold that no genuine issue of fact was raised regarding Bellevue's failure to accommodate Molloy with nonpolice employment, and we reverse this portion of the trial court's order.

The order of the trial court is affirmed in part and reversed in part.

GROSSE and BAKER, JJ., concur.

Reconsideration denied October 4, 1993.

Review denied at 123 Wn.2d 1024 (1994).