# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ROBERT A. HILL, a married man, his sole as his sole and separate property,<br><br>Respondent,<br><br>v.<br><br>MICHAEL EUGENE HUDDLESTON and SARAH HUDDLESTON, husband and wife, and the marital community thereof composed, and ALL OTHER UNKNOWN OCCUPANTS,<br><br>Appellants. | No.  56811-0-II<br><br><br><br>UNPUBLISHED OPINION |

PRICE, J. — This is a case about a residential eviction.  Robert Hill issued a 20-day notice terminating tenancy to Michael and Sarah Huddleston (the Huddlestons).  Hill made several allegations, including that Michael Huddleston (Huddleston) drove erratically late at night, law enforcement was repeatedly called to the residence in connection with domestic violence matters, and 60 to 80 inoperable cars were on the property without Hill's permission.

After Hill filed an unlawful detainer complaint and moved to show cause for a writ of restitution, Huddleston answered.[1]  Huddleston contested the factual allegations made in the complaint, raised two affirmative defenses, and asked for dismissal.  After a show cause hearing, the superior court determined Huddleston's use of the property constituted a nuisance and issued a writ of restitution.

---

[1] We refer to Huddleston as the party to the original lawsuit and appeal because Michael Huddleston was clearly involved in the proceedings.  It is unclear from our record what participation, if any, Sarah Huddleston had in the proceedings.

Huddleston appeals. Huddleston makes numerous arguments but essentially contends that Hill's notice terminating the tenancy was deficient and Hill failed to plead sufficient facts to be entitled to the writ on the basis of a nuisance. Huddleston also requests attorney fees and costs.

We reject Huddleston's arguments and affirm.

FACTS

I. BACKGROUND

The Huddlestons began renting a home from Hill in October 2018 for $1,200 a month. There was no written rental agreement between the parties.

About three years later, Hill alleged problems with the tenancy. He issued a 20-day notice terminating the tenancy in September 2021. The notice alleged a "significant and immediate risk to the health, safety and property of other tenants on the premises" and cited several different legal authorities, specifically "RCW 43.06.220(l)(h), RCW 59.18 and Governor Inslee's Bridge Proclamation." Clerk's Papers (CP) at 5. Hill also attached his sworn affidavit to the notice, which alleged:

> 3. There have been a number of incidents in it has been reported that Mike Huddleston has driven erratically at night, endangering nearby residents. These incidents have caused continuous fear to the nearby residents and has endangered their safety and the safety of their personal property.
>
> 4. Law enforcement has been called to the residence a number of times in connection with domestic violence matters.
>
> . . . .
>
> 6. Mike and Sara Huddleston have allowed or have agreed to allow storage of some 60 to 80 inoperable vehicles, without my permission and consent.

CP at 6.

2

Less than two months later, Hill filed a complaint for unlawful detainer alleging that Huddleston had not vacated the premises after being served with the 20-day notice. Hill's unlawful detainer complaint pleaded that the 20-day notice terminating the tenancy was

> based on Defendants reckless and erratic driving in the neighborhood, endangering nearby residents, as well as a number of calls to the residence by local law enforcement for incidents involving domestic violence matters . . . .

CP at 3. The 20-day notice and affidavit were attached to the complaint, but the complaint did not repeat the allegation of 60 to 80 inoperable cars contained in the notice.

With the filing of his complaint, Hill moved for an order to show cause as to why a writ of restitution should not immediately be issued. Hill's declaration attached to his show cause motion repeated the allegations of domestic violence and Huddleston driving erratically through the neighborhood. But, like his unlawful detainer complaint, the declaration omitted the allegation of the 60 to 80 inoperable vehicles on the property. Once again, however, a copy of the 20-day notice and affidavit containing that allegation was attached to the show cause motion.

Huddleston, appearing through an attorney, answered the complaint and filed a motion to dismiss. Huddleston's answer denied the complaint's allegations of erratic driving and domestic violence. Huddleston filed his own declaration, which stated in relevant part,

> 3. I do not know where the allegations regarding reckless driving in the neighborhood in Mr. Hill's affidavit are coming from. I do not drive erratically or in a reckless way.
>
> 4. I do not know where the "domestic violence" allegations of Mr. Hill come from. I have not been arrested since 2018.

CP at 59. Huddleston's answer also raised two affirmative defenses. First, Huddleston alleged that Hill's 20-day notice failed to comply with any of the reasons specified in RCW 59.18.650—

3

the statute that prohibits the termination of a tenancy unless there is cause to do so as defined in the statute. And second, Huddleston alleged that the 20-day notice failed to make allegations with enough specificity to enable him to respond and prepare a defense to the incidents alleged as required by RCW 59.18.650(6)(b).

II. SHOW CAUSE HEARING

The case proceeded to a show cause hearing.[2] At the hearing, the superior court heard argument from the parties, including allegations about the junk cars. Hill argued that there was a "junk yard of derelict cars and automobile hulls to the tune of 50, 60, 70, I don't know the precise number." Verbatim Rep. of Proc. (VRP) at 5. Hill also argued that Huddleston had failed to refute his allegations. Hill contended there needed to be some specific and articulable allegations of fact rebutting his allegations of erratic driving and domestic violence. Hill also emphasized that the presence of junk cars was inconsistent with a residential neighborhood and Huddleston had failed to contest those allegations as well.

Huddleston's response focused on his two affirmative defenses. First, he argued that Hill's notice failed to comply with any bases for 20-day notices allowed under RCW 59.18.650. Huddleston further contended that the other authorities cited in Hill's 20-day notice, including the governor's Bridge Proclamation, did not allow for any new types of notices to be issued, but merely gave tenants protections from eviction based on the failure to pay rent.

---

[2] Huddleston, his counsel, and Hill's counsel were present for the show cause hearing.

Second, Huddleston contended that Hill's 20-day notice failed to comply with RCW 59.18.650(6)(b)'s requirement to allege specific facts in sufficient detail to permit Huddleston to respond. With respect to the erratic driving and domestic violence allegations, Huddleston argued that there were no details about precisely when or where the incidents occurred. And with respect to Hill's allegation of inoperable vehicles, Huddleston also argued the details were lacking and, in addition, he did not know that having inoperable cars on the property was "un-allowed activity" because there was no evidence that the inoperable cars were prohibited by the terms of a rental agreement.[3] VRP at 12.

Huddleston requested that the superior court not issue the writ of restitution and dismiss Hill's unlawful detainer complaint. However, in the event that the superior court did not dismiss, Huddleston requested that the superior court set the matter for trial due to the existence of material issues of fact. Absent from Huddleston's argument was any mention of the failure of the complaint to plead nuisance or the issue of inoperable cars.

In rebuttal, Hill argued that Huddleston's response was essentially a concession of the existence of the junk cars:

> [N]othing is said about the junk yard that surrounds and is part of the . . . residential premises the house now occupies. And from that, I'm thinking that even the -- even Counsel's Answer is to say that the junk yard still continues. I don't know the number of automobiles. I suspect that they come and go and there's no definite number, but it's being used as a junk yard.

VRP at 14. Hill concluded by arguing that the things about which he was complaining were "factors and matters that are within the ordinary compass of the [c]ourt to say that these are

---

[3] The only known term of the unwritten lease was the payment of $1,200 per month in rent.

unacceptable nuisances." VRP at 17. Hill also stated that they had been served with notice from the county that there would be a daily assessment of a fine if the junkyard was not repaired or removed.

The superior court indicated that it would review the statute again and issue its decision.

III.  SUPERIOR COURT'S ORDERS AND HUDDLESTONS' APPEAL

Later that day, the superior court issued its decision granting Hill a writ of restitution based on the existence of a nuisance. The superior court's order, entitled Order on Show Cause for Writ of Restitution, stated,

> 1.  The Defendant was properly served a 20 day "Notice Terminating Tenancy" on September 29, 2021.
>
> 2.  The affidavit of landlord in support of the notice terminating tenancy listed several nuisance violations: erratic driving at night endangering nearby residents, incidents of domestic violence resulting in law enforcement response, and the presence of 60 to 80 inoperable vehicles.
>
> 3.  Pursuant to RCW 59.18.650(2)(c) at least a 3-day notice is required for eviction based on waste or nuisance.
>
> 4.  Pacific County Board of Health Ordinance 9 Section 1(1.6) defines Public Nuisance to include: "To cause, permit, or allow the presence in the open, as opposed to an enclosed building, of any abandoned or discarded objects or equipment, such as automobiles . . . ."
>
> 5.  The Defendant Michael Huddleston filed a declaration in which he defies several of the above allegations but makes no response to the presence of 60 to 80 inoperable cars on the property.
>
> 6.  There is no right to cure a nuisance to avoid an eviction in Washington State. See Burgess v. Crossan, 189 Wn. App. 97, 358 P.3d 416 (2015).

CP at 61-62 (alteration in original).

In a separate order issued several days later, the superior court repeated its earlier conclusions but added that there was "no issue of material fact" requiring a trial. CP at 64. In that same order, the superior court again granted Hill's request for a writ of restitution and directed the sheriff to deliver possession of the property to Hill. Five days after the second order, the superior court issued the writ of restitution, commanding the sheriff to deliver possession of the property.

Huddleston appeals.

ANALYSIS

Huddleston makes numerous arguments in his appeal, including: (1) Hill's 20-day notice failed to conform to any lawful basis upon which to terminate the tenancy, (2) Hill's notice failed to state sufficient facts to allow Huddleston to adequately prepare a defense, (3) the superior court erred in issuing the writ of restitution based on nuisance because Hill failed to plead nuisance as a basis for bringing the unlawful detainer action, and (4) the superior court erred by not setting the matter for trial because there were genuine issues of material fact and Hill did not prove the existence of a nuisance. Boiled down, Huddleston essentially argues that Hill's 20-day notice and pleadings were deficient, the superior court erred by relying on nuisance, and genuine issues of material fact necessitated a trial. We address each argument in turn.

I. THE UNLAWFUL DETAINER PROCESS

The unlawful detainer action governed by chapters 59.12 and 59.18 RCW allows for a summary proceeding that provides an expedited means for landlords and tenants to resolve competing claims to possession of leased property. *Randy Reynolds & Assocs., Inc. v. Harmon,* 193 Wn.2d 143, 156, 437 P.3d 677 (2019). The unlawful detainer statute was created to provide an efficient summary proceeding as an alternative to the common law action of ejectment. *River*

*Stone Holdings NW, LLC v. Lopez*, 199 Wn. App. 87, 92, 395 P.3d 1071 (2017). Chapters 59.12 and 59.18 RCW are strictly construed in favor of the tenant. *Randy Reynolds & Assocs.*, 193 Wn.2d at 156.

Before initiating an unlawful detainer action, a residential landlord must first issue a written notice terminating the tenancy that generally must be served consistent with RCW 59.12.040. *See* RCW 59.18.650(1), (2), (6)(a). A landlord may file an action for unlawful detainer if the tenant remains in possession of the premises in violation of the terms of the landlord's notice. *See Randy Reynolds & Assocs.*, 193 Wn.2d at 156. An unlawful detainer complaint must "set forth the facts on which he or she seeks to recover, and describe the premises with reasonable certainty . . . ." RCW 59.12.070. To physically evict the tenant, "a landlord may apply for a writ of restitution at the same time as commencing the action or at any time thereafter." *Randy Reynolds & Assocs.*, 193 Wn.2d at 157.

At or after the filing of a complaint for unlawful detainer, the plaintiff may request an order for the defendant to show cause why the court should not issue a writ of restitution. RCW 59.18.370. "Show cause hearings are summary proceedings to determine the issue of possession pending a lawsuit," not a final determination of the parties' rights. *Carlstrom v. Hanline*, 98 Wn. App. 780, 788, 990 P.2d 986 (2000).

At the hearing, the court is to determine the merits of the complaint and answer. RCW 59.18.380. The plaintiff bears the burden of proving the right of possession by a preponderance of the evidence. *Hous. Auth. v. Pleasant*, 126 Wn. App. 382, 392, 109 P.3d 422 (2005). If it appears that the plaintiff has the right to be restored possession of the property, the court enters an order directing the issuance of a writ of restitution. RCW 59.18.380. The opportunity for

immediate temporary relief makes the show cause process similar in some respects to a preliminary injunction proceeding. *See Faciszewski v. Brown*, 187 Wn.2d 308, 315 n.4, 386 P.3d 711 (2016).

II. TERMINATION NOTICE

Huddleston argues that Hill's notice was deficient for two related reasons. First, Huddleston argues that Hill's notice failed to conform to any lawful basis upon which to terminate the tenancy under RCW 59.18.650. And second, Huddleston argues that Hill's notice failed to state sufficient facts to allow him to adequately prepare a defense in violation of RCW 59.18.650(6)(b). We disagree.

A. LEGAL PRINCIPLES

A challenge to the adequacy of notice is a mixed question of law and fact and is reviewed de novo. *Kiemle & Hagood Co. v. Daniels*, 26 Wn. App. 2d 199, 215, 528 P.3d 834 (2023). Washington courts require landlords to strictly comply with timing and manner requirements of notice. *Id.* However, substantial compliance is sufficient when it comes to form and content of notice. *Id.* (discussing the notice requirements of RCW 59.18.650). Although substantial compliance with notice is sufficient, notice must still be "sufficiently particular and certain so as not to deceive or mislead." *IBF, LLC v. Heuft*, 141 Wn. App. 624, 632, 174 P.3d 95 (2007).

RCW 59.18.650 was recently enacted by the legislature in 2021. *See* LAWS OF 2021, ch. 212, § 2. Under the statute, generally, landlords are not permitted to evict a tenant, refuse to continue a tenancy, or end a periodic tenancy unless one of the causes in RCW 59.18.650(2) applies. RCW 59.18.650(1)(a); *Howard v. Pinkerton*, 26 Wn. App. 2d 670, 676, 528 P.3d 396 (2023). The statute provides a list of situations in which the landlord has cause to evict a tenant. *See* RCW 59.18.650; *Howard*, 26 Wn. App. 2d at 676. One of these situations permits a three-day

notice and others require a 20-day notice. RCW 59.18.650(2)(c), (i), (p). For example, a landlord

may terminate a tenancy with a three-day notice when

> [t]he tenant continues in possession after having received at least *three days' advance written notice* to quit after he or she commits or permits waste or nuisance upon the premises, unlawful activity that affects the use and enjoyment of the premises, or other substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors of the tenant[.]

RCW 59.18.650(2)(c) (emphasis added). But there are two specific situations when a landlord

must provide at least 20-days' notice, including:

> (i) The tenant continues in possession after an owner or lessor, with whom the tenant shares the dwelling unit or access to a common kitchen or bathroom area, has served at least *20 days' advance written notice* to vacate prior to the end of the rental term or, if a periodic tenancy, the end of the rental period;
>
> . . . .
>
> (p) The tenant continues in possession after having received at least *20 days' advance written notice* to vacate prior to the end of the rental period or rental agreement if the tenant has made unwanted sexual advances or other acts of sexual harassment directed at the property owner, property manager, property employee, or another tenant based on the person's race, gender, or other protected status in violation of any covenant or term in the lease.

RCW 59.18.650(2) (emphasis added).

Another requirement found in RCW 59.18.650 relates to specificity of the landlord's

notice. It requires the notice to

> [i]dentify the facts and circumstances known and available to the landlord at the time of the issuance of the notice that support the cause or causes *with enough specificity* so as to enable the tenant to respond and prepare a defense to any incidents alleged.

RCW 59.18.650(6)(b) (emphasis added).

10

B.  APPLICATION

Huddleston's first argument is that Hill's 20-day notice was defective because it failed to conform with either of the statute's two situations listed above that require 20-day notice under RCW 59.18.650(2).

Huddleston's next argument is that the notice failed to allege facts with sufficient specificity under RCW 59.18.650(6)(b) to allow Huddleston to adequately prepare a defense. Huddleston complains that Hill's allegations in the affidavit attached to the notice failed to identify enough details about the alleged erratic driving, domestic violence, and 60 to 80 inoperable cars. Both of Huddleston's arguments are unpersuasive.

With respect to Huddleston's first argument, Huddleston is correct that neither of the two bases in RCW 59.18.650(2) related to 20-day notices—situations of shared kitchen or bathroom facilities and sexual harassment—appear to be relevant here.

But even so, the allegations of nuisance found persuasive by the superior court certainly met the requirements for a three-day notice as set forth above.  RCW 59.18.650(2)(c).  Given that Hill was alleging a nuisance, he was only obligated to provide three days of notice—providing 20 days of notice does not invalidate the notice, it only provides Huddleston additional days of notice.

It is true that Hill did not specifically use the word "nuisance" or identify RCW 59.18.650(2)(c) in the notice.  But the 20-day notice cited to RCW 59.18, in part, as the legal basis to authorize the tenancy's termination.  And the 20-day notice also stated that the Huddlestons' tenancy "constitute[d] a significant and immediate risk to the health, safety and property of other tenants on the premises that have been created or allowed" by the Huddlestons.  CP at 5.

11

Additionally, Hill's affidavit clearly specified nuisance-type issues[4] by listing erratic driving, domestic violence, and the storage of 60 to 80 inoperable cars on the property. Combined, these gave Huddleston sufficient notice that a nuisance was being alleged and RCW 59.18.650(2)(c) was implicated. As such, the notice was sufficiently particular so as not to deceive or mislead the Huddlestons that their tenancy was being ended for the alleged existence of a nuisance. *See Heuft*, 141 Wn. App. at 632. Accordingly, Hill's notice substantially complied with the requirements of RCW 59.18.650(2)(c) despite offering 20 days of notice, more than the required minimum of three days' notice.

Similarly unpersuasive is Huddleston's argument that the notice was not specifically detailed enough to meet RCW 59.18.650(6)(b). Again, RCW 59.18.650(6)(b) requires any notice under subsection (2) of the statute to "[i]dentify the facts and circumstances known and available to the landlord . . . that support the cause or causes *with enough specificity* so as to enable the tenant to respond and prepare a defense to any incidents alleged."

Huddleston argues that the factual allegations were too vague to enable him to respond and prepare a defense. To the erratic driving allegations, Huddleston argues the notice did not identify the dates and times of the alleged incidents or the people who observed the alleged activity. To the domestic violence allegations, Huddleston claims the notice failed to identify the specific acts, the perpetrator and victim, who observed the alleged acts, or which law enforcement officers

---

[4] Black's Law Dictionary defines "nuisance" as "[a] condition, activity, or situation . . . that interferes with the use or enjoyment of property; esp., a nontransitory condition or persistent activity that either injures the physical condition of adjacent land or interferes with its use or with the enjoyment of easements on the land or of public highways." BLACK'S LAW DICTIONARY 1283-84 (11th ed. 2019).

investigated the alleged acts of domestic violence. Finally, to the junk-cars allegation, Huddleston claims the notice failed to allege how the 60 to 80 inoperable cars had any relevance, show how the 60 to 80 inoperable cars violated the rental agreement, identify where the vehicles were stored, or show how Huddleston controlled the vehicles.

Huddleston asks too much. Although RCW 59.18.650(6)(b) requires specificity, it does not require an exhaustive catalogue of minute details. The tenant must have enough facts to be able to effectively rebut the allegations, but more than that is not required. *See, e.g.*, *Kiemle*, 26 Wn. App. 2d at 215 (interpreting RCW 59.18.650(6)(b) and rejecting the need for identification in landlord's notice of individuals whose rights were being interfered with in a case involving nuisance because the "critical question . . . is whether the landlord's notice provided enough facts to allow [the tenant] to 'effectively rebut the conclusion reached' " by the landlord (quoting *Hous. Auth. v. Pyrtle*, 167 Ga. App. 181, 182, 306 S.E.2d 9 (Ga. Ct. App. 1983))).

Huddleston's claim that he was unable to respond and prepare a defense to the incidents alleged in Hill's affidavit is unconvincing. Based on the unique circumstances of this case, Hill's affidavit provided enough factual specificity for Huddleston to understand the general allegations against him and prepare a defense as shown by his actual capable defense. For example, Huddleston was able to assess the allegations and prepare his own declaration denying the erratic driving allegation and questioning the domestic violence allegations. In addition to answering the unlawful detainer complaint, Huddleston also raised two affirmative defenses and moved to dismiss the complaint. Huddleston's factual response to the unlawful detainer complaint's allegations of erratic driving and domestic violence, even if weak, demonstrates that he was able to prepare a defense to the allegations.

Moreover, even if Hill's 20-day notice was short of a desired level of detail about the incidents of reckless driving and domestic violence, the allegation of 60 to 80 inoperable cars suffered no ambiguity. Surely such an uncommon allegation was sufficiently detailed for Huddleston to understand it and prepare a defense, if he had any. And, as it happened, it was this specific allegation of junk vehicles and the nuisance created thereby—not the erratic driving and domestic violence—that served as the exclusive basis for the relief granted by the superior court.

In short, the information supplied to Huddleston in the affidavit gave Huddleston "enough facts" to allow him to " 'effectively rebut the conclusion reached' " by Hill. *See Kiemle*, 26 Wn. App. 2d at 215 (quoting *Pyrtle*, 167 Ga. App. at 182). There was no violation of the specificity requirement of RCW 59.18.650(6)(b).[5]

We hold that Hill's 20-day notice was lawful because it both substantially complied with RCW 59.18.650(2)(c) and provided sufficient facts to allow Huddleston to respond to and prepare a defense under RCW 59.18.650(6)(b).

---

[5] Huddleston also relies on a federal case interpreting a federal statute related to Department of Housing and Urban Development owned projects, *Swords to Plowshares v. Smith*, 294 F. Supp. 2d 1067 (N.D. Cal. 2002) for his expansive interpretation of our statute's specificity requirement. But Huddleston offers no persuasive reason why we should adopt a federal court's interpretation of a federal statute for our own statute. *See Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 491, 325 P.3d 193 (2014) ("Federal cases are not binding on this court, which is 'free to adopt those theories and rationale which best further the purposes and mandates of our state statute[s].' " (quoting *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988))).

III. NUISANCE

Huddleston next argues that the superior court erred in (1) relying on nuisance as the basis to issue the writ of restitution and (2) finding that there were no issues of material fact requiring a trial. We disagree.

A. FAILURE TO PLEAD

Huddleston argues that the superior court erred in relying on nuisance as the basis to issue the writ of restitution because Hill failed to plead or argue nuisance as a basis for bringing the unlawful detainer action.

Washington's liberal notice pleading rules are intended to enable " 'the full airing of claims having a legal basis.' " *State v. LG Elecs., Inc.*, 186 Wn.2d 169, 183, 375 P.3d 1035 (2016) (quoting *Berge v. Gorton*, 88 Wn.2d 756, 759, 567 P.2d 187 (1977)), *cert. denied*, 580 U.S. 1052 (2017). Pursuant to CR 8(a), a complaint for relief must "contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." The complaint must "apprise the defendant of the nature of the plaintiff's claims and the legal grounds upon which the claims rest." *Molloy v. City of Bellevue,* 71 Wn. App. 382, 385, 859 P.2d 613 (1993), *review denied,* 123 Wn.2d 1024 (1994). " 'A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests.' " *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 23, 974 P.2d 847 (1999) (quoting *Lewis v. Bell,* 45 Wn. App. 192, 197, 724 P.2d 425 (1986)).

Huddleston's argument that the trial court erred by relying on nuisance when Hill did not plead nuisance in his complaint is unconvincing. Although, the word "nuisance" does not appear

in Hill's unlawful detainer complaint, the 20-day notice and affidavit were attached to the complaint. And, as previously discussed, the notice and affidavit clearly alleged a nuisance, especially with the allegation of 60 to 80 inoperable cars in a residential tenancy.

Moreover, Huddleston's understanding that nuisance was an active issue in the case can be readily seen by his arguments at the show cause hearing. After Hill made his initial arguments to the superior court about Huddleston's alleged improper use of the property, including that the collection of junk cars was inconsistent with a residential neighborhood, Huddleston did not raise any concerns about deficiencies of the complaint—either the failure to specifically plead nuisance or the absence of allegations, in the body of the complaint, about the junk cars. Instead, Huddleston responded substantively, arguing that the details about the junk cars were lacking and he did not know that having junk cars was "un-allowed activity" because there was no rental agreement that actually prohibited the vehicles. VRP at 12.

Given our liberal notice pleading rules, it is apparent that Hill's complaint gave Huddleston " 'fair notice' " that Hill was alleging nuisance. *Dewey,* 95 Wn. App. at 23 (quoting *Lewis,* 45 Wn. App. at 197). Therefore, the superior court did not err in relying on nuisance as the basis to issue the writ of restitution.

B. FAILURE TO ORDER A TRIAL

Finally, Huddleston argues that the superior court erred in not setting the matter for trial because there were genuine issues of material fact and Hill did not prove the existence of a nuisance. Huddleston claims that Hill's failure to include in the body of his complaint and his declaration attached to his show cause order the alleged existence of the junk cars results in Hill

failing to meet his evidentiary burden. Huddleston further claims that he disputed two issues, erratic driving and domestic violence, and thus, a trial should have been held.

The superior court's decision to strike a trial date in an unlawful detainer action is reviewed for an abuse of discretion. *Tedford v. Guy*, 13 Wn. App. 2d 1, 16, 462 P.3d 869 (2020) (Division Two decision).[6] Regardless of whether the superior court issues a writ of restitution at the show cause hearing, "if material factual issues exist, the court is required to enter an order directing the parties to proceed to trial on the complaint and answer." *Randy Reynolds & Assocs.*, 193 Wn.2d at 157. "When a court grants a writ of restitution entitling the landlord to immediate possession of the property, that right is entirely distinct from the final resolution of the material issues of fact disputed by the parties." *Webster v. Litz*, 18 Wn. App. 2d 248, 256, 491 P.3d 171 (2021). But similar to the summary judgment context, if there are no issues of material fact regarding possession or any defenses raised by the defendant, the court need not set the matter for trial. *Tedford*, 13 Wn. App. 2d at 16-17.

Huddleston's claim that the matter should have been set for a trial is unconvincing. Neither of the two issues he cites—erratic driving and domestic violence—were material to the superior court's decision, which was limited to the determination that there was a nuisance related to junk cars. As for the basis actually used by the superior court, the junk cars, Huddleston failed to create

---

[6] In *Kiemle*, Division Three recently indicated a disagreement with *Tedford* and suggested that the appropriate standard in this context should be de novo review. 26 Wn. App. 2d at 218-219. Decisions from other divisions of this court are not binding on any other division or panel. *Sound Inpatient Physicians, Inc. v. City of Tacoma*, 21 Wn. App. 2d 590, 600, 507 P.3d 886, *review denied*, 200 Wn.2d 1003 (2022). Because neither party has briefed the issues related to a discrepancy between two panels of this court and the specific standard of review does not appear to be dispositive in this case, we follow *Tedford* and do not further address this issue.

the need for a trial. As Hill argued at the show cause hearing, nothing in our record shows that Huddleston contested the allegation concerning the 60 to 80 inoperable cars on the property.[7] Consequently, there was no issue of fact about the allegation concerning the 60 to 80 inoperable vehicles that would have necessitated a trial.

Thus, we hold that the superior court did not abuse its discretion by not setting the matter for trial.

IV. ATTORNEY FEES

Huddleston requests an award of reasonable attorney fees and costs on appeal. Huddleston is not the prevailing party in this appeal. Therefore, we reject Huddleston's requests for attorney fees and costs.

CONCLUSION

We affirm.

---

[7] Moreover, at the show cause hearing, Huddleston did not make any argument that Hill failed to meet his evidentiary burden because the complaint and declaration did not include the junk-cars allegation. But importantly, even though neither the text of the complaint nor the declaration attached to Hill's show cause motion referenced the junk cars, Hill's affidavit from the initial notice was attached to both the complaint and the show cause motion. As discussed above, this affidavit *did include* sworn factual statements related to the junk-cars allegation. This affidavit, combined with Huddleston's failure to factually contest these allegations at the show cause hearing, is sufficient to satisfy Hill's evidentiary burden.

No. 56811-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

We concur:

_____
GLASGOW, C.J.

_____
VELJACIC, J.